THE UTAH CONSTRUCTION COMPANY, a Corporation, Appellant, v. J. A. McILWEE and RAY C. McIL-WEE, Copartners Doing Business Under the Firm Name and Style of J. A. McILWEE & SONS, Respondents.

[266 Pac. 1094.]

WRITTEN CONTRACT—MODIFICATION—PAROL EVIDENCE RULE—EXPRESS AND IMPLIED CONTRACT—PROOF—INTERPRETATION OF CONTRACTS—SURROUNDING CIRCUMSTANCES—CONDUCT OF PARTIES.

1. Where contract for construction of a spur railway providing that work was to be completed on or before February 1st in a

way that trains might operate over it in safety was not uncertain or ambiguous, court did not err in excluding evidence of prior or contemporaneous oral argreement that provision as to operation of trains applied only to such time as the ground remained frozen and hard.

2. Where construction contract required the work to be speeded so as to complete a spur-track on or before February 1st in a manner that trains could be operated over it in safety, final completion to be made by July 1st, statement of plaintiff's manager that if trains were operated over road before final completion there would be damage which defendants would be expected to pay for did not render defendants liable, since contract contemplated operation of cars over tracks after February 1st.

3. Where contract for construction of a spur-track contemplated that trains would operate over the track in safety before final completion, evidence of added cost of construction because of sinking and settling of roadbed from operation of cars thereon before final completion was immaterial, as respects claim for extra work.

4. Where contractor's claim for added expense of securing shale and rock from sources not contemplated by contract and specifications for building spur-track depended on proof that party ordering it done was defendants' agent, since trial court's finding against plaintiff as to such agency was supported by and not contrary to evidence, it cannot be disturbed.

5. Where construction company agreed to complete spur-track on, or before February 1st in way that trains could operate over it in safety, in suit for hauling ore thereon at defendants' request, trial court's finding on conflicting evidence that there was no express contract by defendants to pay for hauling cannot be reversed.

6. Where construction company agreed to complete spur-track on or before February 1st in way that trains might operate thereon in safety, and where their claim for compensation for hauling ore depended on proof of an implied contract, court's finding that defendant did not impliedly promise to pay for such hauling, which was not contrary to evidence, cannot be disturbed.

7. In action by construction company to enforce lien for work and materials in building a spur-track, in which defendants filed a cross-complaint, and plaintiff thereafter pleaded a counterclaim and cross-complaint for moneys paid in settlement of claims for obstructing a canal, since trial court did not rule at time objection was made to plaintiff's counterclaim and cross-complaint, and having treated matter therein as pleaded and made fact findings

thereon, matter alleged therein should be treated as before the court on facts.

8. Rule that surrounding circumstances or evidence of conduct may be looked to in aid of interpretation of contract as constituting interpretation placed thereon by party to arrive at intent is not applicable, unless terms employed are susceptible of more than one meaning and contract is thus uncertain or ambiguous and calls for interpretation.

9. When contract is not uncertain or ambiguous, there is no room for interpretation based on matters outside contract or for importing extraneous matters in interpretation.

10. Ordinarily, contract carrying plans and specifications as part thereof requires construction accordingly, and does not obligate contractor to extra and unforeseen work nor to anticipate injurious results of such construction or to provide against matters not set forth.

11. Construction company building a spur-track according to plans and specifications was entitled to reimbursements for moneys paid in settlement of claims for damages due to obstruction of canal running along railway, where plans and specifications did not require restoration of canal at point of obstruction, and under subsequent contract with defendants, it was entitled to recover amount paid in settlement of damages.

APPEAL from the District Court of the Fifth Judicial District, for Bear Lake County. Hon. Robert M. Terrell, Judge.

Publisher's Note.

1. Evidence of preliminary negotiations as aid to construction if instrument, see note in 18 Ann. Cas. 257. See, also, 6 R. C. L. 850. Admissibility of proof of oral agreement supplementing written contract, see notes in 2 Ann. Cas. 146; Ann. Cas. 1914A, 454. See, also, 10 R. C. L. 1036.

8. See 6 R. C. L. 852, 853.

10. See 6 R. C. L. 909.

Appeal and Error, 3 C. J., sec. 623, p. 727, n. 99; 4 C. J., sec. 2853, p. 877, n. 80, p. 880, n. 97; sec. 2855, p. 883, n. 33.

Building and Construction Contracts, 9 C. J., sec. 41, p. 710, n. 27; sec. 191, p. 853, n. 32; sec. 192, p. 853, n. 37.

Contracts, 13 C. J., sec. 485, p. 525, n. 33; sec. 514, p. 544, n. 33; sec. 588, p. 585, n. 15; sec. 606, p. 591, n. 6.

Evidence, 22 C. J., sec. 1570, p. 1177, n. 49; sec. 1663, p. 1248, n. 29.

Action upon contracts for labor and material, and to foreclose mechanic's lien. Judgment for defendants. *Reversed and remanded.*

Story & Crow and J. H. Peterson, for Appellant.

The undisputed evidence shows that there was an implied request on the part of the defendants to haul the ore. Defendants knew of the hauling, permitted it and it was for their use and benefit. Under such circumstances, the law implies a request to perform the service. (*Hughes v. Dundee Mortgage & Trust Inv. Co.,* 21 Fed. 169; *Hill v. Carr,* 78 N. H. 458, 101 Atl. 525; *Ingram v. Basye,* 67 Or. 257, 135 Pac. 883; *Kiser v. Holladay,* 29 Or. 338, 45 Pac. 759; *Grotjan v. Rice,* 124 Wis. 253, 102 N. W. 551; *Wojahn v. National Union Bank,* 144 Wis. 646, 129 N. W. 1068; *Paul v. Wilbur,* 189 Mass. 48, 75 N. E. 63; *Palmer v. Miller,* 19 Ind. App. 624, 49 N. E. 975.)

The court held, but the contract did not clearly show on its face, that plaintiff should not only build the road so as to permit of hauling over the same by February 1st, but should thereafter maintain and restore the road during the period hauling was being conducted. Evidence should have been submitted to show the circumstances existing at the time the contract was entered into, and the conversations of parties with respect to the same. (*Suave v. Title Guaranty & Surety Co.,* 29 Ida. 146, 158 Pac. 112; *State v. Twin Falls L. & W. Co.,* 21 Ida. 410, 121 Pac. 1039, L. R. A. 1916F, 236; *Schurger v. Mooreman,* 20 Ida. 97, Ann. Cas. 1912D, 1114, 117 Pac. 122, 36 L. R. A., N. S., 313; *Harris v. Faris-Kesl Const. Co.,* 13 Ida. 211, 89 Pac. 760.)

A construction contractor is not required to do work not shown on the plans and specifications furnished to him and on which his bid was made. (*Horgan v. McKenzie,* 17 N. Y. Supp. 174; *Phoenix Iron Co. v. The Richmond,* 6 Mackey (17 D. C.) 180; *Sexton v. Chicago,* 107 Ill. 323; *Chapman v. Meling,* 147 Ill. App. 411.)

Jesse R. S. Budge and Merrill & Merrill, for Respondents.

In *Stein v. Fogarty,* 4 Ida. 702, 46 Pac. 681, it is held that in the absence of fraud, accident or mistake, parol evidence of an oral agreement made contemporaneously with the execution of a promissory note cannot be admitted to show that such note, although made payable in money, was by such agreement to be paid in work and labor.

In *Milner v. Earl Fruit Co.,* 40 Ida. 339, 232 Pac. 581, it is said: "The general rule of law that parol evidence cannot be admitted to alter, contradict, vary, add to or detract from the terms of a written instrument or contract, has so frequently been laid down in text books, encyclopedias and decided cases, that no useful purpose would be served in incorporating at length the discussions therein contained." (*First Nat. Bank v. Bews,* 5 Ida. 678, 51 Pac. 777; *Newmyer v. Roush,* 21 Ida. 106, Ann. Cas. 1913D, 433, 120 Pac. 464; *Payette Nat. Bank v. Ingard,* 34 Ida. 295, 200 Pac. 344; *Beebe v. Pioneer Bk. & Tr. Co.,* 34 Ida. 385, 201 Pac. 717; *Hurt v. Monumental Mercury Min. Co.,* 35 Ida. 295, 206 Pac. 184; Page on Contracts, sec. 2152.)

TAYLOR, J.—In October, 1919, plaintiff-appellant, entered into a contract to construct for defendants, for the sum of $100,000, a railway about 3.6 miles in length, from Paris, Idaho, to the Western Phosphate Mine, according to plans and specifications of the Oregon Short Line Railroad Company made a part of the contract, the road when completed to be accepted and approved by an engineer of the railway company. Plaintiff's action is to enforce a lien for the value of material, work and services, alleged to be in addition to those required under the contract. Its right to recover is primarily based upon an interpretation of this contract, and the sufficiency of evidence to sustain a contract or contracts alleged to have been made in addition to this one. It contained this clause:

"The work is to be pushed with all possible speed to completion and completed on or before February 1st, 1920, in a way that trains may operate over it in safety, the final

completion of the road may be done by them any time before July 1st, 1920.''

The $100,000 was paid in advance. The road was not completed until some time after February 1st, in a way that trains might operate over it in safety, or at least without causing the settling and sinking of the track, but was finally completed and accepted in August, 1920.

Plaintiff's lien and complaint claimed a number of items of extras. Defendants, by cross-complaint, claimed $4,604.45 for ties furnished to plaintiff. To this cross-complaint, plaintiff filed what it termed an answer and counterclaim and cross-complaint. After admitting receipt of the ties, and denying any indebtedness therefor, it alleged, by way of counterclaim and cross-complaint, a claim of $4,090.20 under a subsequent agreement with defendants, paid by plaintiff, subsequent to filing its lien and complaint, to certain farmers in settlement of damages suffered by them by obstruction of a canal.

The court disallowed all the claims of plaintiff except one undisputed one of $654.31, and allowed defendants under their cross-complaint for the ties furnished, and entered judgment for defendants for the difference, $3,410.39. Plaintiff appeals from this judgment.

Plaintiff assigns error as to the disallowance of only three of these claims: (1) $20,100, for hauling 402 cars of ore at $1 per ton, alleged hauled at defendants' special instance and request; (2) $13,743.63, alleged extra work necessitated to repair and restore the track due to hauling ore thereover at defendants' request before the roadbed was completed; and (3) the claim of $4,090.20 for settling with farmers for damages to the canal; and in the refusal of certain offered evidence.

[1] To support a recovery for repairing and restoring the roadbed due to settling thereof caused by hauling cars of ore thereover after February 1st, and before final completion, plaintiff alleged and offered to prove that ''With respect to the operating of trains over the road before final completion, it was orally understood and agreed between

plaintiff and defendants as a part of said contract that the trains to be operated over said road, before the final completion thereof, might be so operated during the winter and early spring months while the ground was frozen, but that after the spring thaws when the roadbed became soft such trains could not be operated without injuring the roadbed, and that the provisions with respect to the operating of trains applied only to such time as the said ground remained frozen and hard until the road was finally completed"; and that in March the railroad was so far constructed that trains might safely run over it; that in April, May and June, at a time when the roadbed had become soft and yielding, and this condition known to defendants, they requested and plaintiff at this request operated these trains, resulting in the sinking and settling of the railway, necessitating the expense claimed in restoring it, and thus more material and labor to be performed and furnished than contracted for; that in doing so, plaintiff at defendants' request used shale and rock from sources outside of those contemplated by the contract, all of which was extra work not within the contract.

The court did not err in excluding the evidence of the understanding and agreement prior to or at the making of the contract. The contract was not uncertain or ambiguous. By the provision for completion of the road for safe operation of trains, such operation after February 1st, and the necessary maintenance and completion by plaintiff, were contemplated by the contract; and to permit this evidence of prior or contemporaneous oral agreements, in effect to vary it, would be contrary to rules of evidence or interpretation. (*Milner v. Earl Fruit Co.*, 40 Ida. 339, 232 Pac. 581.)

[2] Plaintiff's contention that, if the contract required it to maintain and restore the road after the hauling of ore and until final completion, then the plans were defective in that the road could not be maintained and restored during hauling by surfacing taken from the cuts, as the contract required, is not well grounded, for no allegation of

fraud, accident or mistake is made, nor any allegation that the plans were defective.

[3] The mere statement of plaintiff's manager to a defendant that there would be damage, and they would be expected to pay for it, could not render defendants liable for that which the contract contemplated, operation of cars over the track after February 1st. For the same reason, evidence of augmented sinking or settling, or the added cost of such restoration, was immaterial.

[4] Plaintiff's claim for added expense of securing shale and rock from sources outside of the "cuts" contemplated by the contract and specifications depended upon proof of Horst's agency for defendants in ordering this to be done. The court's finding against plaintiff as to this agency is supported by and not contrary to the evidence, and cannot be disturbed.

[5] Plaintiff's claim for compensation of $20,100 for hauling ore depends upon proof of a contract, express or implied. Error is assigned as to the finding that no agreement (request) for this hauling was made by defendants. Plaintiff contends that its evidence of specific request to haul the ore, and compliance therewith, although at no fixed price, entitles it to the reasonable value of the services.

Plaintiff seeks to make two uses of its contention that the evidence shows that this hauling was to defendants' interest and benefit. First, that it so strongly supports plaintiff's evidence of an express request and agreement for the hauling as to overthrow the finding of no express request and contract. Secondly, that nevertheless this hauling was to defendants' interest and benefit, done with their knowledge and consent, and thus plaintiff is entitled to reasonable compensation as upon an implied contract.

To support each of these contentions plaintiff argues that defendants were receiving a bonus of $1 per ton for hauling this ore. Plaintiff is in error in this contention. They were receiving $1.50 per ton for ore delivered at the mine end of the railway, and the Western Phosphate Company

agreed to pay defendants a bonus of $1 per ton in consideration of their causing a railway to be built, until the cost of the railway was thus repaid. The ore was to be paid for on a basis of $2.50 per ton, delivered at the bins before hauling, exclusive of the hauling cost. The evidence does not show that defendants received any more for the ore hauled and delivered than they would have at the bins where their contract called for it.

Plaintiff cites the evidence of a telegram from defendant J. A. McIlwee to its manager, reciting, and his testimony showing, that certain Japanese purchasers of the ore were getting impatient at the delay, and threatening to "bring suit of damages that may implicate you and I." Plaintiff argues that it was not liable to the purchasers, and that thus the hauling was for the direct benefit of defendants. The court found against plaintiff as to the express contract upon a conflict of evidence, and there is no such preponderance in the evidence in favor of plaintiff as to reverse this finding.

[6] Viewed in the light of the circumstances, this proof furnished no greater support for a finding of an implied contract than for an express request and agreement. It must be borne in mind that the road was not completed for operation of trains by February 1st, nor until at the earliest March 12th, and that such operation in April, May and June was done with extreme difficulty encountered even then, due to lack of completion to a stage contracted for. It is not improbable that if defendants had lost their contract for delivery, they might have had recourse against plaintiff, perhaps not limited to $1 per ton, but even as high as the total $2.50 per ton. It appears, then, that the hauling might have been for the mutual benefit of the parties, and if so it would not necessarily require a finding of an implied contract based upon a benefit alone to defendants, when, at the same time, it prevented plaintiff's possible liability to damages.

We cannot say that this finding was contrary to the evidence, or that, conceding there was a benefit to defendants,

must as a matter of law imply a contract to pay for that benefit under these circumstances, or that retention of this benefit by defendants, without paying for it, was inequitable.

[7] The item of $4,090.20 contended for was money paid by plaintiff in settlement of claims of farmers for damages due to obstruction of a canal running along the railway. The plans and specifications at other points where this canal was intersected, or in such close proximity as to demand provision against its obstruction, contained items of specifications directing the kind of structure, construction or replacement to be made, but contained no specification or requirement of any kind of structure or restoration of the canal at this point.

The farmers whose water had been obstructed were making claims for damages against both plaintiff and defendants, and it was agreed in writing between plaintiff and defendants that plaintiff should settle such claims, and would be entitled to charge the defendants if it were established that this covering up or impairment, or failure to properly restore the canal, was done in the faithful performance of its contract; but if due to failure to faithfully perform the contract, or any unauthorized departure from such terms, the plaintiff was to have no claim against defendants. The litigation with these farmers extended over a period beyond the time of plaintiff's filing its lien claim and complaint.

When the defendants filed a cross-complaint, plaintiff to this filed its pleading designated a counterclaim and cross-complaint, seeking recovery of this item. Defendants moved to strike this as unknown to our pleading and practice. This was denied. The court found that the plaintiff, through its agents, had gone over the ground and examined it before the contract was entered into; that such inspection and the plans and specifications disclosed that the proposed route of the railway as staked upon the ground would interfere with and obstruct the use of this canal, and that it could not thereafter be used as formerly without being properly repaired or restored, or other necessary provision being made for conduct of water through or around the particular places where said obstructions would thus

necessarily occur; that plaintiff had twice repaired the flume which it had placed at this point in controversy, and thus in effect that the repair or restoration of this canal was a necessary part of the performance of the contract; and that, by twice making provision for restoring the canal without theretofore claiming compensation for such work, plaintiff as a matter of interpretation had admitted that it was liable for the cost of restoring the canal, and thus that this was required in the faithful performance of the contract, and plaintiff could not recover.

The court further made a finding, in part of fact and in part a conclusion of law, that the items in plaintiff's counterclaim and cross-complaint were all well known to plaintiff prior to filing its amended complaint; that "therefore, said items do not constitute any basis for a supplemental complaint, and a counterclaim and cross-complaint to defendant's cross-complaint and counterclaim is a pleading unknown to our law"; and a conclusion of law that plaintiff was not entitled to recover for this item.

This claim matured by payment by plaintiff after the filing of the complaint. It was, if anything, an action upon an independent contract, or arising out of the same transaction as the matter pleaded in defendants' cross-complaint. It was not included in the lien or action upon the lien claim. It is not material what the pleading was called. The item pleaded was thoroughly gone into in the introduction of evidence. Both parties had a full opportunity to contest its allowance or disallowance. The court not having ruled at the time objection was made to the pleading, and having thereafter treated the matter as pleaded, and made findings of fact thereon, it ought now to be treated as before the court on the facts.

The plans and specifications explicitly direct the kind of construction to protect or restore this canal at all other points except stations 136+40 to 138, where this damage occurred by reason of the filling of the canal. Defendants could not, in the face of this, rely upon an oral understanding before the contract, or find any in the contract binding plaintiff to make any provision as to the flume at this point.

[8, 9] The rule that the court may look to the surrounding circumstances, or evidence of conduct of a party under a contract, in aid of interpretation thereof, as constituting the interpretation placed thereon by such party, to arrive at the intent of the parties, is not applicable unless the terms employed are susceptible of more than one meaning, and the contract is thus uncertain or ambiguous and calls for interpretation. (13 C. J., p. 524, sec. 485, pp. 542, 543, sec. 514; 6 R. C. L., pp. 852, 853, sec. 241.) When there is no uncertainty or ambiguity, there is no room for interpretation based upon matters outside of the contract, or for importing extraneous matters in aid of interpretation. (13 C. J., pp. 543, 544, sec. 514.)

Bearing in mind that such inquiries are for the purpose of ascertaining the original intent expressed in the contract as of the time of entering into it (13 C. J., p. 523), and that the intent of one of the parties only cannot guide in the construction of the contract, it cannot be said that the contract and plans and specifications are ambiguous when they specifically provided for restoration of the canal and the kind thereof, flumes, drains, culverts and the like, at all other points, because they did not require any other than general construction at this point, or that the contract intended that plaintiff make such provision at a point where the specifications did not call for any.

[10] To hold that plaintiff must have known that the canal would be obstructed at this point is entirely different from, and furnishes no sufficient support for, a holding that thereby there should be imported into the contract an agreement to accommodate, replace or restore the canal at this point.

If so, what kind of replacement or restoration was called for, of what material or permanency or service? Was it to be a flume, a culvert, cement, metal or wood? And at whose judgment? The best answer is, that the plans and specifications did not call for any. The contract did call for what might be termed general construction at this point, such as at other places in the absence of particular

specifications.   Ordinarily, a contract carrying plans and specifications as a part thereof requires construction according to such plans and specifications, and does not obligate the contractor to extra and unforeseen work, nor to anticipate injurious results of such construction, or to provide against matters not set forth in the contract or plans and specifications.   (*Chapman v. Meiling,* 147 Ill. App. 411.)

[11]   There is no ambiguity or uncertainty in the contract, plans and specifications.   The uncertainty only arises when we consider that the canal appears on the plans as near and upon the right of way, and oral testimony of the fact that it appeared upon the ground that this canal would be blocked.   It is doubtful if this latter evidence was material at all.   (*Holmes v. Danforth,* 83 Me. 139, 21 Atl. 845.)   To hold that the plaintiff was bound to accommodate, replace or restore the canal at this point would be to import into the contract terms as to which the contract is not ambiguous, but as to which the plans and specifications were entirely silent.   In such case, the provisions of the contract as to general methods of construction control. (9 C. J., p. 710, sec. 41.)   To hold otherwise, it is necessary, first, to go outside of the contract to import both surrounding circumstances and interpretation by plaintiff's operation thereunder, in order to create the ambiguity, and then solve the ambiguity by use of the very same imported facts.

The damage was not caused by any failure of plaintiff to faithfully perform its contract in building the road at that point according to the contract, plans and specifications, and by the subsequent contract between the parties, plaintiff was entitled to recover the amount paid in settlement thereof.   This item should have been allowed to the plaintiff.

The judgment is reversed, and the cause remanded with instructions to the court to allow this item and enter judgment accordingly.   Costs to appellant.

Wm. E. Lee, C. J., Givens and T. Bailey Lee, JJ., and Downing, District Judge, concur.

Budge, J., did not sit at the hearing and took no part in the decision.