382 P.2d 906

**Wilford CURZON, Plaintiff-Respondent,**

v.

**WELLS CARGO, INC., a corporation, Defendant-Appellant.**

**No. 9260.**

Supreme Court of Idaho.

June 20, 1963.

Louis F. Racine, Jr., and Robert C. Huntley, Jr., Pocatello, for appellant.

Gee & Hargraves, Pocatello, for respondent.

McQUADE, Justice.

Wilford Curzon, respondent herein, is a trucking contractor licensed by the Public Utilities Commission of the State of Idaho

to haul road materials and mine products or minerals. Wells Cargo, Inc., appellant herein, is a Nevada corporation, authorized to do business in Idaho. Appellant's business activities in Idaho include contract hauling, general contracting and strip mining.

Curzon brought this action for loss of profits against appellant alleging that in May of 1960, the parties entered into an oral contract whereby Curzon was to haul approximately 50,000 tons of phosphate ore from an area designated as "Allen's Ranch", located approximately 20 miles northeast of Conda, Idaho, to Conda and Soda Springs, Idaho, at $1.45 per ton; that thereafter, Curzon hauled approximately 2,288 tons of phospate ore to Conda, Idaho; that the said oral contract was then re-negotiated and the parties agreed that Curzon would receive $1.32 for hauling the remaining tonnage; and that in September, 1960, appellant breached the contract by refusing to permit Curzon to complete said contract. Curzon sought to recover, as damages, profits he contends he would have realized had he been allowed to perform the contract.

Appellant's answer denied the alleged oral contract. Rather, it was contended by appellant that it had only contracted with Curzon to haul the 2,288 tons of ore which Curzon hauled and received payment in full.

At the trial it was established that a company referred to as Valley Nitrogen Producers had purchased a quantity of phosphate ore stockpiled at Allen's Ranch. The stock pile was estimated to contain between 55,000 and 60,000 tons of ore. Thereafter, either in the latter part of 1959 or in January, 1960, an agent of Valley Nitrogen Producers contacted J. Frank Sharp, Vice President and Manager of Idaho operations of the appellant, Wells Cargo, Inc., for the purpose of negotiating a contract between the firms whereby appellant would haul ore to Conda and Soda Springs to be thereafter loaded on railroad freight cars. This agreement was never reduced to writing.

On February 29, 1960, Tom Collins, assistant to the President of the appellant corporation sent a letter to Valley Nitrogen Products Company offering to haul 40,000 tons of the ore at a stated price. The record fails to indicate that this offer was accepted. However, on March 4, 1960, appellant undertook to haul some ore to Conda, Idaho. Appellant had hauled more than 4,000 tons before bad roads forced them to discontinue their operations. Appellant rented a loader owned by Curzon to load the above mentioned ore on its trucks. Curzon was employed to operate the loader.

Curzon testified after the weather had forced a discontinuance of the hauling operations in March Sharp contacted him and entered into an oral agreement with him on behalf of the appellant, whereby

Curzon would load and haul the remaining ore in the stockpile for $1.45 per ton. Under terms of this alleged oral agreement, Curzon testified it was agreed that Mr. Sacrison, who was employed by the appellant as a combination mining engineer and superintendent, would contact Curzon and tell him when and where to haul the ore. Curzon testified that in the latter part of June, 1960, Sacrison contacted him and told him to haul 5,000 tons to Conda, Idaho, immediately and that the remaining 50,000 tons would be hauled at a later date to Soda Springs, Idaho. Curzon moved his equipment to Allen's Ranch and began hauling the following morning. He continued operations for four days, having hauled 2,-288 tons, when ordered by Sacrison to stop hauling. Thereafter, Curzon claims the contract was re-negotiated and the parties agreed the price per ton for loading and hauling would be $1.32. Curzon stated he was thereafter assured that he had the contract to haul the remaining 50,000 tons of ore and in reliance upon the contract he had purchased two trucks for use in performance of the contract, had helped install scales near the stockpile to enable the parties to weigh the ore as it was hauled, and had negotiated with several parties for the purchase of a conveyor belt for use in loading the ore on railroad freight cars. Curzon further stated he was at all times ready and willing to perform the contract and that the agreement was breached in September, 1960, when Sacrison informed him appellant had decided it would bring in some of its own trucks and complete the haul. In September and October, appellant actively engaged in hauling the ore.

Witnesses for appellant denied that they ever entered into a contract on behalf of appellant with Curzon to haul phosphate ore other than that hauled by Curzon in the latter part of June or early part of July. Appellant urges it could not have entered into a contract with Curzon whereby Curzon would haul the entire stockpile of ore for the reason that at that time appellant had no contract with Valley Nitrogen Products for the hauling of this ore. Appellant asserts that its contract with Valley Nitrogen Products was not completed until September, 1960.

At conclusion of the evidence appellant moved for a directed verdict upon grounds that the evidence failed to establish existence of a contract between the parties and for the further reason that, assuming a contract had been established, the "proof of damages is so remote and speculative and conjectural as not to meet the standards and requirements of the law as set down in various Idaho Supreme Court decisions regarding damages in a breach of contract action." The motion was denied and the cause was submitted to the jury. The jury returned a verdict for Curzon awarding damages in the amount of $5,400.00.

Appellant thereupon moved for a judgment notwithstanding the verdict of the jury, contending the verdict was contrary to law and the evidence in that there was no substantial evidence to establish the existence of a contract between the parties and because the evidence failed to support the amount of damages awarded Curzon by the jury. Appellant also moved for a new trial upon the same grounds as those urged in support of the motion for a judgment notwithstanding the verdict of the jury and upon the additional ground that the trial court had committed error by permitting Curzon "to present to the jury depositions of defendant's witnesses during plaintiff's case in chief, thus denying defendant the right to the effect of presenting defendant's witnesses during defendant's case in chief." The motions were denied and the trial court entered judgment for Curzon in accordance with the verdict of the jury. Appeal is taken from the orders of the trial court denying appellant's motions for directed verdict, judgment notwithstanding the verdict, and new trial and from the judgment.

By assignment of error appellant urges that the evidence fails to disclose that there was a meeting of the minds upon which a contract could be based. More specifically, it is contended that the evidence fails to establish either the time for performance of the contract or the amount of work to be performed thereunder. As previously noted, there is a conflict in the testimony concerning the tonnage to be hauled under the alleged agreement. Appellant contends that there is no agreement for the hauling of any additional ore. Curzon testified that under the terms of the alleged agreement he was to haul 50,000 tons of ore. Accordingly, if the jury chose to believe the testimony of Curzon, they could have found that the contract provided that Curzon was to haul 50,000 tons of ore. The determination of credibility of witnesses and weight to be given their testimony is for the jury. Harper v. Johannesen, 84 Idaho 278, 371 P.2d 842; Gordon v. Sunshine Mining Co., 43 Idaho 439, 252 P. 870. I.C. § 9–201.

Appellant further contends that time of performance is an essential element of a contract and that failure specifically to provide therefor "renders a contract void and unenforceable." We do not so construe the law. Where no time is expressed in a contract for its performance, the law implies that it shall be performed within a reasonable time as determined by the subject matter of the contract, the situation of the parties, and the circumstances attending the performance. Williams v. Idaho Potato Starch Co., 73 Idaho 13, 245 P.2d 410. See also 12 Am.Jur., Contracts, § 299, p. 854; 20 Am.Jur.Evidence, § 1120, p. 978; 17 C.J.S. Contracts, § 503, p. 1063. Wormward v. Taylor, 70 Idaho 450, 221 P.2d 686.

Appellant's next assignment of error urges that there is no sufficient or substantial evidence to support the amount of the jury's verdict. In this respect appellant contends that all testimony presented by Curzon was "highly speculative and lacking in any foundation upon which the witnesses testimony could be based and therefore was incompetent as a basis for a verdict of the jury." The record reveals testimony tending to establish gross profits that Curzon estimated he would have made if allowed to complete the contract. From the estimated gross profits Curzon deducted his estimated costs. These estimates were based upon known costs of doing business, such as labor, depreciation, insurance and also upon Curzon's experience as a contract hauler. Curzon also deducted from the estimated gross profits here in question the sum of $1,500 which represented profits he realized by using his trucks in the performance of other contracts. Curzon testified his trucks would have hauled 30,000 tons of the 50,000 tons to be hauled and that he would have hired the remainder hauled by other truckers. His estimated loss of profits, after deductions, was $17,776.00. There is evidence that Curzon's average profit of all materials hauled in 1960 was $0.23 per ton. It was established that if this average profit figure were multiplied by the 30,000 tons Curzon contemplated hauling his profit would have been $6,900.00. The jury awarded Curzon $5,400.00.

In DeWiner v. Nelson, 54 Idaho 560, 33 P.2d 356, this Court quoted with approval the following statement from the case of McConnell v. Corona City Water Co., 149 Cal. 60, 85 P. 929, 8 L.R.A.,N.S., 171:

" ' "Where a party has contracted to perform labor from which a profit is to spring as a direct result of the work done at a contract price, and he is prevented from earning this profit by the wrongful act of another party, the loss of this profit is a direct and natural result which the law will presume to follow the breach of the contract. * * *" ' "

With regard to the allowance of damages, this Court, in DeWiner v. Nelson, supra, stated:

" ' "Uncertainty as to the amount of damages is not an obstacle in the way of their allowance. Uncertainty as to the cause from which they proceed is what has occasioned trouble, and only when it cannot be ascertained with reasonable certainty that these have sprung from the breach alleged are they to be rejected as too remote or conjectural or speculative." ' "

See also 15 Am.Jur., Damages, § 23, p. 414.

A review of the record fails to support appellant's contention that the testimony

concerning Curzon's loss of profits is "highly speculative" and therefore incompetent as a basis for the verdict of the jury.

Where the verdict is supported by substantial, competent, though conflicting evidence, it will not be disturbed on appeal. Anderson v. Smith Frozen Foods of Idaho, Inc., 83 Idaho 494, 365 P.2d 965; Wurm v. Pulice, 82 Idaho 359, 353 P.2d 1071; C. R. Crowley, Inc. v. Soelberg, 81 Idaho 480, 346 P.2d 1063; Seamons v. Spackman, 81 Idaho 361, 341 P.2d 442.

Appellant contends the trial court erred in permitting Curzon to introduce into evidence depositions of Sharp and Sacrison. The parties agree that at the time of the trial Sacrison was in South America and Sharp was in the State of New York. It is contended, however, that inasmuch as appellant instituted the deposition proceedings and plaintiff made no request for taking the depositions of the witnesses as cross examination under I.C. § 9–1206 and I.R.C.P. 43(b), he should not have been allowed to introduce the depositions. Admission of the depositions, under the facts of this case, was justified by I.R.C.P. 26(d)(3). The trial court did not err in allowing Curzon to introduce the depositions into evidence in support of his case.

After careful consideration of all errors assigned we conclude that the trial court committed no reversible error in the trial of this cause.

The judgment is affirmed.

Costs to respondent.

KNUDSON, C. J., and McFADDEN, TAYLOR and SMITH, JJ., concur.