697 P.2d 1184

**James HAENER, dba J & D Construction, Plaintiff-Respondent,**

v.

**ADA COUNTY HIGHWAY DISTRICT, a municipal corporation, Defendant-Appellant.**

No. 15448.

Supreme Court of Idaho.

April 5, 1985.

Charles Lee Mumford and John Frederick Mack, of Holland & Hart, Boise, for defendant-appellant.

Stephen L. Beer, Boise, for plaintiff-respondent.

SHEPARD, Justice.

This is an appeal from a judgment in favor of plaintiff-respondent Haener and against defendant-appellant Ada County Highway District (ACHD) in a dispute arising from a construction contract between the parties. We affirm.

ACHD advertised for bids to excavate for and install a storm drain below an existing paved street in Boise. Haener was the low bidder at $51,640.72. He was awarded the contract, which was signed June 19, 1979. On that same day, he was authorized to begin work.

Before Haener commenced work, but after the parties had signed their written contracts, a pre-construction conference was held between Haener and agents of ACHD. During that conference, there was disclosed to Haener for the first time the possible existence of old buried interurban railway tracks beneath the surface of the street. The possibility of railroad tracks was not included in the specifications for the project, nor was there any mention of it in the contract, albeit other bidding contractors had raised the question of the possible existence of the rails.

A technician for the highway district testified at trial that the district has no documentation of the location or existence of the old interurban trackage, or of what part of the railway might have been removed. He speculated that the Idaho Historical Society might have such records. The trial court found that, although some employees of ACHD were aware of the potential for hitting the old railroad tracks during the excavation, they did not tell Haener of that potential prior to the pre-construction meeting.

Haener began work on June 28, 1979. Five days later, he found that the railroad track was indeed below the surface of the paved street and further that the trackage was imbedded in concrete. Haener notified the ACHD inspector that he had hit railroad tracks and requested a change order under the contract. Although controverted by ACHD, Haener testified at trial that he was told to proceed to remove the rails and that ACHD would settle accounts at the end of the contract for the extra costs incurred in such removal. The findings of the trial court reflect that the court relied upon and adopted Haener's version of the disputed facts. As further found by the trial court, on July 10, Haener calculated his costs for the equipment and labor required to remove the railroad tracks and made a written request to ACHD for payment of $6.00 per lineal foot for that work. ACHD did not respond to this letter from Haener.

There is no dispute that Haener continued to remove the railroad tracks, which removal involved very substantial additional effort and financial expenditure and nearly doubled the amount of time necessary for the completion of the contract work. ACHD was aware of the additional work problems which were presented to Haener because of the unexpected subsoil conditions.

As found by the trial court, "At some time near the end of the contract, Mr. Joines [deputy director of ACHD] informed Mr. Haener that he would need a breakdown of the extra costs." Haener complied with that demand and furnished a breakdown of his costs for the removal of the railroad trackage. There appears no issue as to the validity or accuracy of that cost-breakdown. The findings of the trial court indicate that the court adopted that cost-breakdown in its entirety, with the exception that the trial court did not allow the 15% profit requested by Haener.

Joines responded by letter to the Haener cost-breakdown, indicating he had reviewed the claim. Joines stated, *"I don't deny that additional work was required,* but this was reflected in the additional quantities over those bid for which payment has been made ..."* (Emphasis supplied.) In essence, Joines was asserting that all of the additional work and problems presented by the encounter with the railroad trackage were included in the original contract under the unit cost of $4.10 per cubic yard of trench excavation.

In the original bid, Haener had included a unit price for each item under the contract, *i.e.,* specified dollar amounts per lineal foot of particular types of pipe, a stated amount per lineal foot of gravel surface restoration, and $4.10 per cubic yard of trench excavation. Haener's total bid was then calculated according to the estimates of ACHD of the quantity of each item that would be required for the project, and the final bid was then presented as the specific sum of $51,640.72. However, the parties agree that that specific sum was not fixed, but rather, Haener was to excavate for the trench, following which an engineer for ACHD would measure the dimensions of the trench. Then Haener was to be paid, according to that measurement, at the contract rate of $4.10 per cubic yard. Both parties expected that Haener might, and probably would, be paid a sum below or above the final contract figure, because the specifications were only approximations, and final figures were to depend upon actual excavation measurements.

When the dispute between the parties could not be compromised, this action was filed and a court trial was held. Thereafter, the trial judge found that the parties had entered into a valid and binding contract "to construct a storm drain;" that Haener had encountered materially different subsoil conditions from what he had justifiably anticipated; that the parties had mutually agreed that Haener would perform the additional work necessary to remove the rails; that the parties had agreed that Haener would be compensated for that additional work; that there was no agreement reached on the amount of payment to be made to Haener for the work; that the contractual provisions for modification in the case of materially different subsoil conditions were not followed, and thus that there was a failure to agree on an essential term; that the wage rates and equipment costs furnished by Haener in his cost-breakdown were reasonable, and that each of the items of costs had been incurred for the benefit of ACHD; and finally, that Haener was entitled to recover the reasonable value of the labor and equipment he had provided at the request of ACHD. The trial court then entered judgment in favor of Haener in accordance with Haener's cost-breakdown, but subtracting the 15% profit item contained therein.

Appellant ACHD argues that the trial court erroneously relied on the following language in the general conditions of the contract:

"Should the subsoil conditions be found to differ materially from those indicated by logs of test borings and/or records made by other methods of underground exploration, adjustment in cost, either more or less, shall be made as provided in the general conditions of changes in the work."

ACHD asserts that language in the contract specifications should govern the instant situation. Those specifications state, in pertinent part:

"This section covers excavation, trenching, and backfilling for pipelines and appurtenances complete. This item shall consist of all necessary clearing, grubbing and site preparations; traffic control devices, *removal of all material of whatever description that may be encountered;* removal and disposal of debris; handling and storage of materials to be used for fill and backfill; all necessary bracing, shoring and protection; pumping and dewatering as necessary; all backfill, preparation of subgrades; and final grading, dressing and cleanup of the site.

\*      \*      \*      \*      \*      \*

"Payment for trench excavation will be made at the contract unit price bid per cubic yard, which price shall include all clearing, trench excavation and dewatering and all other work necessary or incidental for completion of the item." (Emphasis added.)

The findings of the trial court clearly indicate that Haener had no knowledge of the possible existence of the railroad trackage at the time he bid the job and signed the contract. When the railroad tracks were discovered, it was apparent that substantial extra and uncontemplated work would be required to remove those rails. Haener requested a written change order, which was never acted upon by ACHD. Rather, ACHD's agent directed Haener to remove the rails and complete the project and told Haener he would receive extra compensation for performing that work.

The essence of ACHD's position is that Haener was required under the contract to remove all material of whatever nature in excavating the trench, and that Haener should only be compensated at the contract unit price of $4.10 per yard for such work, regardless of the extra costs that might be incurred and the additional time required to remove any unexpected material. On the other hand, the essence of Haener's position is that the encountering of the railroad trackage was not anticipated by him, and that the bargain struck in the contract did not contemplate such an eventuality. Haener asserts that he is entitled to rely upon the contract, which states, "should the subsoil conditions be found to differ materially ...," and that he rightfully anticipated therefrom that he would receive extra compensation if unusual subsoil conditions were encountered.

In the instant case, the terms of the contract, when read together, are at best ambiguous regarding the above-stated position of each of the parties. Arguably, under the contract terms relied upon by the trial judge, Haener could expect an upward adjustment in costs for the extra time, effort and costs incurred in removing the trackage. The holding of the trial judge, that Haener should receive extra compensation for rail removal, is further supported by the evidence and findings of the trial court that Haener attempted to comply with the contract requirements of a written change order, but received no cooperation in that regard from ACHD. Haener reasonably relied upon the ACHD agent's representation that the work should proceed, that the rails should be removed, and that Haener would receive compensation for that work.

There is no question but that the contract at issue here was drafted by ACHD and submitted to Haener for his signature on a take-it-or-leave-it basis. In cases of ambiguous contract terms, the contract is to be construed in favor of the non-drafting party, here, Haener. *Jensen v. Seigel Mobile Homes Group,* 105 Idaho 189, 668 P.2d 65 (1983); *Pollard Oil Co. v. Christensen,* 103 Idaho 110, 645 P.2d 344 (1982); *Werry v. Phillips Petroleum Co.,* 97 Idaho 130, 540 P.2d 792 (1975). Furthermore, where contractual provisions are conflicting, the interpretation of the written contract and of the intent of the parties is a matter for the trial judge's discretion. *Woodvine v. Triangle Dairy, Inc.,* 106 Idaho 716, 682 P.2d 1263 (1984); *Pollard Oil Co. v. Christensen, supra.* Here we find no abuse of the trial judge's discretion in her interpretation of the written contract.

Even were we to assume, for the sake of argument, that there were no conflicts between the contract provisions and that the contract terms were not ambiguous, we nevertheless would affirm the determination of the trial judge. It is the very essence of contract law that there must be a meeting of the minds of the parties for the contract to be binding upon the parties. *Pierson v. Sewell,* 97 Idaho 38, 539 P.2d 590 (1975); *Brothers v. Arave,* 67 Idaho 171, 174 P.2d 202 (1946). In the instant case, there was clearly no meeting of the minds regarding the existence of the railroad trackage, of the subsoil conditions that might be encountered, or of the difficulties that would be presented by the rail removal. As above noted, the issue here is

not one involving a minor modification of the type or amount of work contemplated by the contract. Rather, we are presented with a major modification involving an increase of at least 50% of the original contemplated costs of the contract and an increase of nearly 100% of the time required to cómplete the contract. In short, the parties neither contemplated nor bargained regarding such a monumental change in anticipated subsoil conditions. In such a situation, a correct measure of the relief to be accorded is the basis used by the trial judge here, *i.e.,* the costs incurred by Haener and the benefits obtained by ACHD.

▪ ACHD argues that Haener has received a double recovery if he is allowed to collect an amount per lineal foot of railroad track removed and also is allowed to collect an amount per cubic yard of material excavated. ACHD asserts that the trial court erred in not making a specific finding in regard to this alleged double recovery. While clearly the lineal feet of rail trackage removed by Haener also was a portion of the cubic yards excavated by Haener, we find no evidence in the record presented by ACHD which would enable this Court or the trial court to determine the amount, if any, of the asserted double recovery. The trial court apparently determined from what evidence she did receive that $6.00 per lineal foot was reasonable in addition to the contract payment of $4.10 per cubic yard. Hence, we find there to be no error in the form of a double recovery.

▪ ACHD lastly argues that Haener's damage claims were only estimates and were not an adequate basis on which the court could award damages. We find in the record that Haener provided the court with a thorough breakdown of his costs, calculated from his employees' time cards, which were accepted into evidence by the court. Although ACHD attempted to impeach those exhibits, the trial court examined the exhibits and found the claim of Haener to be reasonable. We find no error in the trial court's treatment of the damages question. Damages need not be proven with mathematical exactitude.

*Clark v. International Harvester Co.,* 99 Idaho 326, 581 P.2d 784 (1978); *Curzon v. Wells Cargo, Inc.,* 86 Idaho 38, 382 P.2d 906 (1963).

We have examined the remaining assertions of error and find them to be without merit. The decision of the trial court is affirmed. Costs to respondent. No attorney's fees on appeal.

DONALDSON, C.J., and HUNTLEY, J., concur.

BAKES, Justice, concurring specially in part:

I concur in the majority opinion except that portion dealing with the appellant's claim that the trial court's findings did not adequately address the issue of appellant's claim of alleged double recovery. I would remand the cause to the trial court to make express findings on the issue of double recovery raised by the appellant.

BISTLINE, Justice, concurring in the affirmance of the judgment below.

Of the four enumerated issues presented, one in particular seems to be of consequence: Whether the trial court erred in failing to interpret the contract according to its clear and unambiguous language, thus allowing Haener to recover sums in excess of the contract price of $4.10 per cubic yard of excavation which was stated in the contract to require the removal of "all material of whatever description." The Highway District, in arguing this issue, repeated a portion of its trial brief:

The basic contract is a "unit" contract, whereby plaintiff, as the winning bidder, agreed to perform the project on a cubic-yard basis as far as the trench excavation is concerned. In item number 8 of the bid, which was incorporated into the contract, plaintiff agreed to excavate the trench for the laying of the pipe at the rate of $4.10 per cubic yard.

Page 4 of the contract incorporates into the contract the Ada County Highway District's standard specifications. That section of the standard specifications

which applies to trench excavation is found at page 114, section 300 entitled "Trench Excavation and Backfill for Underground Pipelines." Section 300.01 states:

"This section covers excavation, trenching and backfilling for pipe lines and appurtenances complete. This item shall consist of all necessary clearing, grubbing, and site preparation; *removal of all material of whatever description that may be encountered;* removal and disposal of debris; handling and storage of materials to be used for fill and backfill; all necessary bracing, shoring and protection; pumping and dewatering as necessary; all backfill, preparation of subgrades; and final grading, dressing, and clean-up of site." (Emphasis added.)

Thus, under the terms of the contract agreement itself, plaintiff is obligated to remove all material from the trench within the confines of the contract price.

It is thus seen that this was primarily the defense which the Highway District relied upon at trial, and this is primarily the contention it pursues on its appeal. In its appellate brief, it argues:

Moreover, the contract is unambiguous in defining exactly what Haener's obligation was with respect to excavation, to-wit, *"removal of all material of whatever description that may be encountered."* (Exhibit D–D at p. 114, section 300.01.) This unambiguous contract provision was admittedly part of the agreement between the parties. . . .

Thus, upon encountering the rails and railroad bed material, Haener was obligated under the clear and unambiguous terms of the contract to remove the rails at the unit price agreed upon of $4.10 per cubic yard. Appellant's Brief, pp. 15–16.

Haener in his respondent's brief meets the issue head-on by referring us to unchallenged findings of fact made by Judge Bail:

6. On June 22, 1979 the ACHD issued a Notice to Proceed to J & D Construction Co., authorizing them to begin the construction of the storm drain. On

June 28, 1979, work was begun. Prior to beginning the actual construction there was a pre-construction conference between J & D Construction and members of the ACHD. There was no mention in the specifications for the project of the possibility that railroad tracks would be encountered nor did the plaintiff know of the tracks prior to the formation of the contract although some employees of the ACHD were aware that it was a possibility before the formation of the contract. However, they did not tell the plaintiff of that possibility prior to the pre-construction meeting.

7. On July 3, 1979, the plaintiff encountered railroad tracks embedded under the surface of State Street in about 2 feet of concrete. He did not know of the presence of the tracks until then nor of the problems they would pose.

R., p. 58.

Two conclusions of law, which in my view would more aptly bear the label of findings, state:

3. The plaintiff encountered materially different subsoil conditions which he, justifiably, did not anticipate.

4. The plaintiff and defendant mutually agreed that the plaintiff would perform the additional work necessary to remove the rails and the plaintiff would be compensated for it.

R., p. 61.

Haener argues for the applicability of this statement in *Utah Construction Co. v. McIlwee,* 45 Idaho 707, 719, 266 P. 1094, 1097 (1928):

Ordinarily, a contract carrying plans and specifications as a part thereof requires construction according to such plans and specifications, *and does not obligate the contractor to extra and unforeseen work,* nor to anticipate injurious results of such construction, *or to provide against matters not set forth in the contract* or plans and specifications. (Emphasis added.)

That statement of the law accords with that which has always been my own understanding. It is certainly a general state-

ment of the law. *See* 17A C.J.S. 404 *Contracts* § 371(3). Haener also brings to our attention the case of *Haggert Construction Co. v. State of Montana Highway Commission,* 149 Mont. 422, 427 P.2d 686 (1967). That case is basically the same as this, other than that here the Highway District while knowing of the possibility of long-buried steel track made no such disclosure to Haener until after the contract was executed, and in *Haggert* the contract was entered into on the basis of Highway Commission disclosure of information as to available materials sites which turned out to contain gravel not suitable for the intended use.

The Highway Commission relied on an exculpatory provision of the contract which stated:

"The data shown herein represents condensed information from the Laboratories and as reported by the Field Forces regarding the source of surfacing materials for this project. It does not constitute a guarantee by the State Highway Commission of the quality or quantity of the material as shown * * *."

*Haggert, supra,* 427 P.2d at 687.

The Montana Supreme Court's view, however, was:

There is nothing to show that appellant expects less than complete reliance on its materials reports.

If the State Highway Commission were allowed to rely on the exculpatory provisions of the contract, the purpose for which such reports are offered would be sadly frustrated, if not totally destroyed. No prudent contractor would proceed in reliance on such reports at his absolute peril; the necessity to guard against unforeseen deficiencies would result in much higher bids than conditions would normally warrant.

Although appellant cites some authority to the contrary, the position which the court takes here is amply supported in case law. In *Sandkay Const. Co. v. State Highway Commission,* 145 Mont. 180, 184, 399 P.2d 1002, 1005, this question was posed: "Or to state it with more

particularity, where plans and estimates or specifications are used as a basis for bids, is a contractor who has been led to believe that the conditions indicated in such plans exist, able to rely on them and recover for expenses necessary by conditions being other than as represented by such plans?" We answered in the affirmative.

. . . .

We agree with the California Supreme Court that, "The crucial question is thus one of justified reliance". . . .

. . . .

. . . In other words we will look to "justifiable reliance". If appellants were to prevail here, the State of Montana would be enriched to the extent of additional work done by Haggart, without showing any negligence or misconduct on the part of the contractor.

*Id.,* at 427 P.2d 687–89.

In *Hash v. J.R. Sundling & Son, Inc.,* 150 Mont. 388, 436 P.2d 83, 86 (1967), the Montana Court restated the rule of *Haggart:*

Additionally, it is clear that under appropriate circumstances, the contractor who encounters substantially different conditions in performing a construction contract from those contemplated and set forth in the plans and specifications contained therein may be entitled to increased compensation for the additional work. See generally 76 A.L.R. 268; 85 A.L.R.2d 212. The test of whether or not such contractor is entitled to additional compensation is whether or not he justifiably relied upon the plans and specifications for the construction in making his bid and entering into the contract. *Sandkay Const. Co. v. The State Highway Commission,* 145 Mont. 180, 399 P.2d 1002; *Haggart Const. Co. v. State of Montana,* [149 Mont. 422,] 427 P.2d 686 (Mont.1967). The reason for this rule is that if unanticipated conditions not reasonably foreseeable are actually encountered in the work and vary substantially from anticipated conditions reasonably foreseeable by the parties at the time they entered into the contract,

the contractor is performing an entirely different contract than the one agreed upon and in such case is entitled to the reasonable value of his additional services.

Of the controversy in *Hash*, the Montana court said:

Certainly Hash was entitled to rely upon the plans and specifications for the job, the profiles of the subgrade, and the grade stakes in determining the depth of the required excavation in submitting his bid and entering into the excavation subcontract, unless there was something therein that would indicate that he should have reasonably foreseen and anticipated the conditions actually encountered. This is the crux of the matter in the instant case and is clearly a factual inquiry.

. . . .

It appears reasonably clear to us that the foreseeability of conditions actually encountered is purely and simply a question of fact and the trial court having determined such fact adversely to Sundling based upon conflicting evidence has thus foreclosed Sundling's contentions herein. As a consequence and because the trial court has determined that the conditions actually encountered were not reasonably foreseeable and could not have been anticipated by Hash, Hash was justifiably entitled to rely upon the plans and specifications for the project, the profiles of the subgrade and the grade stakes in bidding on the subcontract for excavation. Thus, when Hash was called upon to perform an unexpected type of excavation outside the scope of the contract, he became entitled to the reasonable value of his additional work.

*Id.*, at 86–87.

It is to be noted that the Montana court saw the issue tried below "clearly a factual inquiry," and also saw that "foreseeability of conditions actually encountered is purely and simply a question of fact." Of Judge Bail's conclusions 6 and 7, I have already mentioned that they were indeed factual determinations, not conclusions, but unchallenged in either event. Even were the same challenged as factual determinations, as in *Hash* both are supported by competent and substantial evidence. When Judge Bail, the trier of the facts, made those findings, the law suit was over. Clearly, the judge found as a fact that, notwithstanding language in the contract that excavation included "removal of all material of whatever description that may be encountered," that it was neither foreseeable nor justifiably anticipated by Haener in entering into the contract to remove subsurface materials that on the price bid he would be required to demolish and remove a long-buried steel and concrete railroad bed.

Furthermore, as noted in *Hash*, and as a matter of common knowledge, "material" or "materials" in the highway construction business are words of art—pertaining to such as gravel, sand, pea rock, and plain dirt and/or clay fill. Those who regularly ply the highways have seen many state signs proclaiming such accumulations as Material Sites. Steel rails are not materials.

Where the Highway District lost in district court on what was for the most part a factual inquiry, it seems to me that so long as the court remains committed to its decision that I.C. § 12–121 allows for attorney's fees on appeal, there is no reason whatever for not awarding such here where the Highway District's appeal is simply a request for findings differing from those made by the trial court.

Finally, although the opinion authored by Justice Shepard reads well, I fail to understand why the Court should not stay with the briefs of counsel. Hence, I am unable to understand the necessity for the excursion into the realm of ambiguity of contract. I do not see that the parties claim any ambiguity. I do not see that there is any ambiguity. I do not see that there was not a meeting of the minds. In fact, there was a meeting—but the parties never attempted a meeting of the minds on removal of the buried tracks—something of which

Haener was totally unaware, and kept so disadvantaged by the Highway District's failure to disclose.

I do agree with Justice Shepard's disposition of the damages issues. Accordingly, my vote is to affirm the judgment and award costs and attorney's fees to Haener.