958 P.2d 1150

**Wilfred E. ALLEN and Lila E. Allen, husband and wife, Plaintiffs–Respondents–Cross Appellants,**

v.

**Patricia J. DUNSTON, a widow, Defendant–Appellant–Cross Respondent.**

No. 23847.

Supreme Court of Idaho, Coeur d'Alene, April 1998 Term.

June 9, 1998.

Lukins & Annis, Coeur d'Alene, for appellant. Edward W. Kok argued.

Finney & Finney, Sandpoint, for respondents. John A. Finney argued.

JOHNSON, Justice.

This is a contract case. We conclude that there was no contract because the parties did not reach a meeting of the minds. We also reject estoppel and implied-in-fact contract as bases to support enforcing an obligation in this case. We remand the case to the trial court for a determination of whether there was unjust enrichment.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS

In February 1995, Patricia J. Dunston (Dunston) began corresponding with Wilfred E. and Lila E. Allen (the Allens) concerning the desire of the Allens to drill a well (the well) on real property (the property) in which Dunston retained a life estate following a sale of the property to Tumble Rock Resources, Inc. (Tumble Rock). In several letters (the letters) to the Allens, Dunston discussed the survey of the well site by the Allens and whether to allow the Allens to drill and maintain the well by means of an easement or a lease with a minimal amount of rent. In April 1995, the Allens had a survey performed on the property and the well drilled. In a postcard (the postcard) to the Allens, Dunston acknowledged that the well had been drilled and indicated to the Allens that there was "no hurry to get lease

or easement done." Later, Dunston sent to the Allens for their consideration a draft (the draft) of a "Perpetual Easement Deed." In this letter Dunston said:

> This is the draft of the perpetual easement that I am sending to TumbleRock board for their approval, suggestions etc. I have no idea how they will receive it or if they will even consent to sign anything like it.
>
> Please read it over *carefully*. Make sure you understand *everything* in it & that your names are spelled as you want to sign them.
>
> If you have any ideas for additions or changes, *please let me know.*
>
> I will be gone for about 2 weeks in the middle of July but expect to be at GOLAD in early August with someone who will be taking out the rest of the lumber. I hope we can have everything about the well settled by then.
>
> Let me know if you have any questions.

The draft identified Dunston, Tumble Rock, and the Allens as the parties, stated consideration of $10.00, described the property, and stated that the purpose of the easement was as follows:

> to cause to be drilled a well in the center of the above described 50 foot radius circle, to construct such storage and distribution facilities as approved by the Panhandle Health District and the State of Idaho Health Department, to have the perpetual right to enter upon the above described land to maintain, repair, replace, renew and protect said well and facilities including the right to disturb any brush vegetation in order to maintain, repair, replace said facilities, with the right of all necessary or convenient ingress and egress to and from, over and through, under, along and across said land and other adjoining lands of the grantor.

Neither Dunston nor Tumble Rock ever signed the draft. The Allens sued Dunston seeking specific performance. The Allens did not join Tumble Rock as a party. Both Dunston and the Allens filed motions for summary judgment and agreed that there were no disputes concerning any genuine

issues of material fact. Concluding that the letters, the postcard, and the draft were sufficient to satisfy the statute of frauds, the trial court granted summary judgment to the Allens awarding them an easement for the well during Dunston's life estate in the property. The trial court awarded costs, but not attorney fees, to the Allens. Dunston appealed, and the Allens cross-appealed the denial of their attorney fees.

## II.

### THERE IS NO CONTRACT BECAUSE THE PARTIES DID NOT REACH A MEETING OF THE MINDS.

■ Dunston asserts that the trial court was incorrect in finding that a contract for the grant of an easement was formed between Dunston and the Allens. We agree.

In *Haener v. Ada County Highway District*, 108 Idaho 170, 697 P.2d 1184 (1985), the Court noted that "[i]t is the very essence of contract law that there must be a meeting of the minds of the parties for the contract to be binding upon the parties." *Id.* at 173, 697 P.2d at 1187.

Dunston's written communications to the Allens are not sufficient to form a contract with the Allens to convey an easement to the Allens to allow them to drill and maintain a well on the property. These communications left it in doubt whether a lease or an easement would be the appropriate means to accomplish what the Allens wanted to do. Although Dunston authorized the Allens to get a well site survey, she did not authorize the drilling of a well. Her postcard after the Allens drilled the well still left in doubt whether a lease or an easement would be used. The draft and Dunston's letter transmitting it to the Allens for their consideration identified the parties as Dunston, Tumble Rock, and the Allens. Dunston's letter accompanying the draft indicated that her willingness to grant an easement was dependent on Tumble Rock's consent. There is no evidence that Tumble Rock ever consented to the grant of an easement by Dunston. Therefore, there was no meeting of the minds, and there is no contract.

## III.

### ESTOPPEL DOES NOT APPLY.

■ The Allens assert that we may uphold the trial court's judgment based on estoppel. We disagree.

Estoppel is an equitable doctrine to remedy a reasonable detrimental change in position due to a promise made by another. *Boesiger v. Freer*, 85 Idaho 551, 559–61, 381 P.2d 802, 806–07 (1963). Dunston's letters to the Allens were not representations to the Allens that they could drill a well on Dunston's life estate property. The postcard and the draft came after the well was drilled and left open the means by which the well would be authorized. Therefore, there were no representations upon which the Allens had the right to rely, and Dunston is not estopped to deny that the Allens could drill the well and maintain it during her lifetime.

## IV.

### THERE IS NO IMPLIED–IN–FACT CONTRACT BUT THE TRIAL COURT SHOULD DETERMINE WHETHER THERE IS UNJUST ENRICHMENT TO DUNSTON ENTITLING THE ALLENS TO COMPENSATION FOR THE WELL.

The Allens assert that there is an implied-in-fact or an implied-in-law contract. We disagree concerning the implied-in-fact contract but remand for the trial court to determine if there is unjust enrichment to Dunston.

In *Kennedy v. Forest*, 129 Idaho 584, 930 P.2d 1026 (1997), the Court outlined the law of implied contracts, as follows:

> Contracts implied-in-law and those implied-in-fact are two distinct concepts. A contract implied-in-fact is a true contract whose existence and terms are inferred from the conduct of the parties. *Continental Forest Prods., Inc. v. Chandler Supply Co.*, 95 Idaho 739, 743, 518 P.2d 1201, 1205 (1974). Such a contract is grounded in the parties' agreement and tacit understanding. *Id.*, 95 Idaho at 743, 518 P.2d at 1205. In contrast, a contract

implied-in-law is not a true contract at all. *Id.*, 95 Idaho at 743, 518 P.2d at 1205. It is a legal fiction, a non-contractual obligation created by the courts to provide a contractual remedy where none existed at common law. *Id.*, 95 Idaho at 743, 518 P.2d at 1205 (citation omitted). It is "imposed by law for the purpose of bringing about justice and equity without reference to the intent or the agreement of the parties and, in some cases, in spite of an agreement between the parties." *Id.*, 95 Idaho at 743, 518 P.2d at 1205 (citations omitted). We employ the phrase "implied-in-law contract" synonymously with quasi-contract, unjust enrichment, and restitution. *Id.*, 95 Idaho at 743, 518 P.2d at 1205.

*Id.* at 587, 930 P.2d at 1029.

 We focus first on the Allens' contention that there is an implied-in-fact contract granting them an easement to drill and maintain a well. No agreement, understanding, or intent of both Dunston and the Allens to form a contractual obligation can reasonably be inferred from Dunston's words in her written communications and the draft and by the Allens' actions in drilling the well. Dunston's clear statement to the Allens in her written communications was that she authorized the Allens to survey the site and that she wanted Tumble Rock to consent before the easement was granted. It is not reasonable to infer from these circumstances that Dunston gave the Allens permission to drill

the well. Therefore, we conclude there was no implied-in-fact contract.

We focus next on the Allens' contention that there is an implied-in-law contract. Specifically, the Allens argue that it would be unjust to allow Dunston to retain the benefit and enrichment of her life estate by the well, and that the appropriate remedy is the value of the benefit conferred. Because the trial court focused on the statute of frauds in resolving this case, the trial court had no occasion to address the question of unjust enrichment to Dunston. Therefore, we remand the case to the trial court for this purpose.

## V.

## CONCLUSION

We reverse the trial court's summary judgment awarding the Allens an easement. We remand the case to the trial court for a determination of unjust enrichment to Dunston.

We award costs on appeal to Dunston.

TROUT, C.J., and SILAK, SCHROEDER and WALTERS, JJ., concur.