THE HAGGART CONSTRUCTION COMPANY, a Corporation, Plaintiff and Respondent, v. THE STATE OF MONTANA acting by and through the STATE HIGHWAY COMMISSION, Defendant and Appellant.

No. 11093.
Submitted April 12, 1967. Decided May 11, 1967.
Rehearing denied May 25, 1967.
427 P.2d 686.

Honorable Forrest H: Anderson, Atty. Gen., Helena, Donald

D. MacPherson, Daniel J. Sullivan, Robert A. Tucker, K. M. Bridenstine, Helena, D. R. Matthews, Missoula, Peter McKinney and Thomas F. Dowling, Harry C. Alley (argued), Helena, for appellant.

Loble, Picotte & Fredericks, Helena, Anderson, Symmes, Forbes, Peete & Brown, Billings, Gene A. Picotte (argued), Helena, Jerome Anderson (argued), Billings, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment entered in favor of plaintiff, hereinafter referred to as Haggart, for additional expenses incurred on a road construction contract between Haggart and appellant, Montana State Highway Commission.

Haggart, a general contracting company, received at its offices in Fargo, North Dakota, an invitation from appellant to bid on a highway construction project near Richey, Montana. This "Notice to Bidders" was received 19 days prior to bid letting. Haggart thereupon requested a "Bid Proposal" from appellant, which included the "Plan and Profile" and the proposed "General Contract." These materials were received by Haggart 14 days before bid letting, and included "Available Surfacing Materials Reports." Such reports contained technical data on three gravel pits near the construction site from which the contractor could obtain materials to be used on the road. The three pits were State-optioned and gravel therefrom would be supplied free of charge to the successful bidder; or put another way "royalty-free" gravel close to the job site.

The available materials report was based on test drillings and laboratory analysis conducted by appellant and indicated that acceptable surfacing materials could be produced economically and in sufficient quantities from the pits. Haggart won the contract. As stated in the findings of fact made by the district court, and these findings are not challenged, the gravel in all three pits was not suitable for the intended use and could not have been processed by Haggart to meet quality specifications in the contract. Haggart incurred expenses in excess of $147,-

000.00 in obtaining suitable gravel elsewhere and obtained a judgment therefor.

The district court's findings, unchallenged here, are to the effect that: (1) the appellant intended the bidders to rely on its sources of material; (2) the bidders could not independently investigate nor check the accuracy of the representations; and (3) the representations as to fitness constituted a warranty.

While no finding of wilful misrepresentation was made, at least an implied finding of negligent testing by the appellant was made. In this connection one witness testified that samples containing too much sand were rejected as a standard practice. At the very least the findings were that the representations were misleading.

Appellant does not seriously deny the fact that the material reports were misleading inasmuch as the gravel obtained was not of the quality indicated. Rather appellant relies upon certain exculpatory provisions of the contract, arguing that such provisions place the risk squarely on the contractor to make an independent assessment of available materials. The district court ruled that appellant in effect warranted the existence of suitable materials and that Haggart acted in justifiable reliance on such representations to his detriment. The only issue, then, is whether the exculpatory provisions offer a defense to appellant under the particular circumstances of this case.

Language in the contract relied upon by appellant provides in pertinent part:

"The Commission will provide test data concerning quality and quantity but will make no guaranty in any respect as to quality and quantity of material produced therefrom * * *. If the contractor elects to use any or all of such indicated sources, * * * the contractor shall be wholly and completely responsible for the quality and quantity of any and all materials supplied and furnished in such a case. * * * The contractor may use any indicated source he chooses, but it shall be his respon-

sibility, and his alone, to produce satisfactory material therefrom * * *."

In addition, the "Available Surfacing Materials Report" itself contained the following language:

"The data shown herein represents condensed information from the Laboratories and as reported by the Field Forces regarding the source of surfacing materials for this project. It does not constitute a guarantee by the State Highway Commission of the quality or quantity of the material as shown * * *."

Although Haggart argues that the contract is ambiguous and should be construed against the drafter of the instrument (here the appellant), we feel that the above-cited provisions are quite clear. But having considered case law and policy issues raised, we do not feel that the exculpatory clauses are enforceable in this instance.

Appellant admits that one purpose in furnishing available materials reports to prospective bidders is to induce lower bids. The advantage to Montana taxpayers as a result of this practice is clear. Since Haggart received the materials report only 14 days before bid letting, the practical difficulty in making an independent analysis of such materials is obvious. The record further indicates that few contractors bidding on such projects have sufficient time or test facilities to make an intelligent appraisal of available materials. There is nothing to show that appellant expects less than complete reliance on its materials reports.

If the State Highway Commission were allowed to rely on the exculpatory provisions of the contract, the purpose for which such reports are offered would be sadly frustrated, if not totally destroyed. No prudent contractor would proceed in reliance on such reports at his absolute peril; the necessity to guard against unforeseen deficiencies would result in much higher bids than conditions would normally warrant.

Although appellant cites some authority to the contrary, the

position which the court takes here is amply supported in case law. In Sandkay Const. Co. v. State Highway Commission, 145 Mont. 180, 184, 399 P.2d 1002, 1005, this question was posed: "Or to state it with more particularity, where plans and estimates or specifications are used as a basis for bids, is a contractor who has been led to believe that the conditions indicated in such plans exist, able to rely on them and recover for expenses necessary by conditions being other than as represented by such plans?" We answered in the affirmative.

In Fehlhaber Corp. v. United States, 151 F.Supp. 817, the plaintiff was permitted damages resulting from reliance on false governmental representations in spite of exculpatory clauses. In Hollerbach v. United States, 233 U.S. 165, 34 S.Ct. 553, 58 L.Ed. 898, the Supreme Court held that the government could not deny liability for similar misleading statements.

The recent California case of Wunderlich v. State, 56 Cal.Rptr. 473, 423 P.2d 545, involved a fact situation similar to the one before us and had an interesting history in the California courts. The district court of appeals awarded a contractor damages caused by the failure of gravel pits tested by the state to conform to expectations. The lower court said:

"In the present case it would not be reasonable to hold that the state, by resorting to provisions of an exculpatory nature in the standard specifications, could escape responsibility for the accuracy of information upon which it expected bidders to place reliance in formulating their bids. In such circumstances the state is not relieved from liability by general contractual provisions requiring the bidder to investigate a source of materials which is designated by the state as being satisfactory in nature." (50 Cal.Rptr. 151, 162, 423 P.2d 545, 556.)

The Supreme Court of California reversed in favor of the State, and said:

"* * * Although there is some evidence that plaintiffs 'relied' on the alleged representations as to the character of the Wilder pit, the question is whether, under the circumstances

of the indefinite nature of the statements and the existence of exculpatory provisions, the bidder could *justifiably* rely on the statements. It does not appear that plaintiffs could have done so, and the state is not responsible for the subjective interpretation placed upon the information by bidders."

Thus the California Supreme Court based its decision on an absence of justifiable reliance. But we feel that the facts in this case differ from those in Wunderlich in several important particulars. The representations made in the California case fell far short of a warranty and contained considerably more cautionary language than is here present. The California high court characterized the statements as "suggestive only" or "merely indications," falling short of assertions of fact. In Wunderlich, the contractor had a greater opportunity to examine the job site personally and in fact did make such an inspection before submitting a bid. Furthermore, the gravel involved in the state optioned source was not readily available but had to be purchased by the contractor. And finally, there was no direct evidence that test reports were furnished for the express purpose of eliciting lower bids.

We agree with the California Supreme Court that, "The crucial question is thus one of justified reliance." Wunderlich v. State, 56 Cal.Rptr. 473, 476, 423 P.2d 545, 548. Although the two California courts disagreed in analyzing the facts, both opinions fairly set forth the legal issues presented. Considering the record before us, there is every reason to believe that Haggart's reliance upon the representations made was justified. This is particularly true when the appellant expected such reliance to result in lower bids.

The State Highway Commission places itself in a contradictory position when on one hand it warrants the condition of the gravel pits, but the next moment disclaims any liability arising from reliance on such representations. Section 13-719, R.C.M.1947, provides:

"*Inconsistent words rejected.* Words in a contract which are

wholly inconsistent with its nature, or with the main intention of the parties, are to be rejected."

Certainly the exculpatory clauses are inconsistent with the statements made concerning gravel sources and the purpose for which such statements were rendered. Basic notions of fair play, as well as sound principles of public policy, require the contradiction to be resolved in favor of Haggart in this case.

Individual contractors are in a poor bargaining position with respect to the type of road construction contract involved here. It would be unreasonable to suppose that prospective bidders could obtain more equitable terms, since the customary practice of appellant seems to include the use of these exculpatory clauses. The contractor is inevitably in a "take it or leave it" situation. The danger to public interests, implicit in such a case, is pointed out in Ozark Dam Constructors v. United States, D.C., 127 F.Supp. 187, 190:

"A contract for immunity from the harmful consequences of one's own negligence always presents a serious question of public policy. That question seems to us to be particularly serious when, as in this case, if the Government got such an immunity, it bought it by requiring bidders on a public contract to increase their bids to cover the contingency of damages caused to them by the negligence of the Government's agents. Why the Government would want to buy and pay for such an immunity is hard to imagine. If it does, by such a provision in the contract, get the coveted privilege, it will win an occasional battle, but lose the war."

For the foregoing reasons, the judgment must be affirmed. We are not here holding that such exculpatory clauses may not be enforced in other situations, that detrimental reliance may be assumed in all cases, or that parties to such contracts are bound to exercise anything less than reasonable and prudent judgment. In other words we will look to "justifiable reliance." If appellants were to prevail here, the State of Montana would be enriched to the extent of additional work done by Haggart,

without showing any negligence or misconduct on the part of the contractor. Not only would individual interests represented here suffer an injustice, but so would the taxpaying public in general.

The judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES DOYLE, ADAIR and JOHN C. HARRISON concur.