No. 80-320

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

CHARLES STENERSON and F. W. SCHMIDT,
joint venturers under the name of
STENERSON AND SCHMIDT CO-PARTNERS,

Plaintiffs and Respondents,

-vs-

THE CITY OF KALISPELL, a municipal
corporation of Montana,

Defendant and Appellant.

---

Appeal from: District Court of the Eleventh Judicial District,
In and for the County of Flathead, The Honorable
James M. Salansky, Judge presiding.

Counsel of Record:

For Appellant:

Warden, Christiansen & Johnson, Kalispell, Montana

For Respondent:

Cumming & Weaver, Columbia Falls, Montana

---

Submitted on Briefs: April 15, 1981

Decided: **JUN 1 5 1981**

Filed: **JUN 1 5 1981**

Thomas J. Kearney
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Plaintiffs Stenerson and Schmidt, contractors, brought this action in District Court, Flathead County, seeking to recover $28,301.31 from the City of Kalispell. The district judge entered judgment for the contractors for the total cost overrun on a rough grading job on the Buffalo Hills Golf Course. The City appeals.

In March 1975, the City of Kalispell asked for bids for rough grading and related work on an addition to the Buffalo Hills Golf Course. Respondent contractors obtained copies of the plans and specifications for the proposed work, including a booklet entitled "Rough Grading Specifications" and a map entitled "Rough Grading Plans". Based on these documents, respondents submitted a bid of $94,991.50.

On April 18, 1975, respondents entered into a contract with the City for the lump sum of $94,991.50, with a unit cost of $1.10 per cubic yard for any additional work. Plaintiffs began working shortly thereafter and completed the work in the allotted 60 days. During this period, respondents performed additional work which was negotiated separately and was paid for by the City. They also entered into a contract for additional construction, called Phase Two, which was terminated after partial completion because of lack of funds.

While engaged in Phase One, the contractors apparently advised the City on several occasions that they were moving more material than was contemplated in the contract. They did not request a change order, nor demand extra compensation before contracting for Phase Two, nor did they ever refuse to continue working.

Final payment for Phases One and Two was completed prior to January 1976. On January 7, 1976, contractors demanded by letter that the City compensate them for the extra 27,477 cubic yards of earth which they had moved which had not been computed

into the bid price. The City refused to pay and the contractors filed suit.

The City moved to dismiss, and following plaintiffs' filing of an amended complaint, moved for summary judgment. The City argued that by reason of certain exculpatory clauses in the grading contract, the contractors had assumed the risk of making an erroneous bid and could not hold the City responsible. Because of the provisions in the contract documents indicating that the calculations on the "Rough Grading Plan" were "approximate," and that the contractors "shall make [their] own determination as to the amount of topsoil and grading work to be done before submitting a bid," the City asserts that the contractors can have no claim for the additional work done.

The district judge found that plaintiff contractors justifiably relied on the information provided in the specifications and plans in making their bid, and that the specifications and plans were in error in setting forth the amount of material which would have to be moved. He awarded $28,301.31 to plaintiffs to compensate for the overrun of 27,477 cubic yards moved. The City appeals, raising several issues which we frame as follows:

1) Did the district judge err in not granting defendant's motion for summary judgment?

2) Does the evidence support the findings of the District Court?

3) Is the City entitled to judgment under the language of the contract?

After the contractors filed their amended complaint, the City moved for summary judgment. The City argued that the contract documents plainly advised all bidders to make their own determination as to the amount of material to be moved and not to rely on the figures on the plans and specifications. By entering into the contract, the bidders bound themselves to do the rough

- 3 -

grading at the price bid and can get no additional compensation. Thus, the City argues, the plaintiffs' complaint fails to state a claim, there can be no issues of material fact before the court, and summary judgment should have been granted.

Rule 56, M.R.Civ.P. provides that a defending party may move for summary judgment. Summary judgment shall be rendered by the judge "if the pleadings, depositions . . . interrogatories . . . admissions . . . [and] affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Here the district judge denied summary judgment, without memorandum. His reason appears to be obvious: a genuine issue of material fact existed in this case. Based on a recent line of cases from this Court, the district judge determined that the fact finder had to hear the evidence in order to find whether or not the contractors justifiably relied on the plans and specifications in entering into the contract. See Sandkay Const. Co. v. State Highway Comm'n (1965), 145 Mont. 180, 399 P.2d 1002; Haggart Const. Co. v. State Highway Comm'n (1965), 149 Mont. 422, 427 P.2d 686; Hash v. Sundling & Son, Inc. (1967), 150 Mont. 388, 436 P.2d 83; Sornsin Const. Co. v. State (1978), 180 Mont. 248, 590 P.2d 125, 35 St.Rep. 2001. With this factual determination necessary to a decision in the case, the district judge was correct in denying defendant's motion.

Appellant next attacks the findings of fact and conclusions of law, arguing that the evidence does not support the findings, and that the findings and conclusions do not support the judgment. In making this argument, appellant again urges this Court to ignore the long line of cases from this Court which give a contractor the right to rely on plans and specifications furnished to him in bidding on and contracting a job. The district judge here considered the evidence in light of these decisions and based his findings and conclusions on the evidence

- 4 -

presented. We find no error.

In 1965, in the case of Sandkay Const. Co. v. State Highway Comm'n (1965), 145 Mont. 180, 399 P.2d 1002, this Court addressed the following issue:

> "[W]here plans and estimates or specifications are used as a basis for bids, is a contractor who has been led to believe that the conditions indicated in such plans exist, able to rely on them and recover for expenses necessary by conditions being other than as represented by such plans?" Sandkay, supra, 145 Mont. at 184, 399 P.2d at 1005.

In Sandkay, we answered that question in the affirmative, finding there that the conditions actually encountered by the contractors in performing the contract could not have been reasonably anticipated, which, in effect, put the contractors into the position of having to "'perform an entirely different contract than [sic] the one upon which they bid.'" Sandkay, supra, 145 Mont. at 185, 399 P.2d at 1005. See also Hash v. Sundling and Sons, Inc. (1967), 150 Mont. 388, 436 P.2d 83.

Several other cases have presented the issue of the effect of exculpatory clauses on a contractor's right to recover in situations in which reliance is alleged by the contractor. In Haggart Const. Co. v. State Highway Comm'n (1967), 149 Mont. 422, 427 P.2d 686, Haggart bid on a highway construction job and was told that he could use gravel in State-optioned pits as described in the "Available Surfacing Materials Reports." The gravel was later found to be unsuitable and the plaintiff incurred additional expense in obtaining gravel elsewhere. The defendant did not deny that the materials reports were misleading, but rather relied on exculpatory provisions in the contract as a defense to the suit. Those provisions indicated that the Commission made no guaranty as to the quality and quantity of the materials available, and further that if the contractor chose to furnish his own materials, he would be responsible to produce satisfactory material.

learned that the plans failed to show truthfully the amount of material that would actually have to be moved . . . the bidder would have had to have a resurvey of the whole site, at considerable expense and delay."

Additionally, the judge found that there was no information in the specifications indicating that the plans were based on an aerial map with a contour interval of five feet, which was then depicted on the plans with a contour interval of one foot. We also note that as in the Haggart case, the bidders had less than three weeks to submit bids, and all on-site inspection was conducted during the spring break-up.

In sum the district judge found that despite the exculpatory clauses in the contract signed by Stenerson and Schmidt, the contractors were justified in relying on the representations made by defendant in furnishing the plans and specifications. Both Schmidt and Stenerson testified that they bid this job in the usual manner, which included relying on the plans and specifications. They testified to making on-site inspections prior to bidding, and could see no discrepancy between the ground elevations as seen on the ground and the ground elevations as shown on the plans. Mr. Schmidt indicated on cross-examination that he and his partner used the figures on the plans because "in my business we have to rely on the expertise of the people who make these." He testified that he had no reason to believe that the figures were inaccurate, and had no way of so determining without surveying. Mr. Stenerson testified that in the course of his work career, he had bid on jobs perhaps 200 times, using plans and specifications such as these as the basis of his bid. His testimony also indicated that in his business of earthmoving it was not customary to double-check the architect or engineer by resurveying.

We find this evidence to be sufficient to support the judge's finding that the contractors justifiably relied on the

The district judge found that the exculpatory provisions were not enforceable. He noted that Haggart received the materials reports only 14 days before bid letting, giving him little time to investigate independently. He further found that few contractors bidding on such projects have sufficient time or test facilities to make an intelligent appraisal of materials. Despite the exculpatory clauses, the district judge concluded:

> "[T]here is nothing to show that appellant expect[ed] less than complete reliance on its materials reports.
>
> "If the State Highway Commission were allowed to rely on the exculpatory provisions of the contract, the purpose for which such reports are offered would be sadly frustrated, if not totally destroyed. No prudent contractor would proceed in reliance on such reports at his absolute peril; the necessity to guard against unforeseen deficiencies would result in much higher bids than conditions would normally warrant." Haggart, supra, 149 Mont. at 425, 427 P.2d at 687-688.

We affirmed the district judge in that decision but noted:

> "We are not here holding that such exculpatory clauses may not be enforced in other situations, that detrimental reliance may be assumed in all cases, or that parties to such contracts are bound to exercise anything less than reasonable and prudent judgment. In other words we will look to 'justifiable reliance.'" Haggart, supra, 149 Mont. at 428, 427 P.2d at 689.

The district judge in the instant case noted factors supporting his determination of justifiable reliance, similar to those we approved in Haggart. He found that the defendant knew or should have known that the information on the plans and specifications would be used by prospective bidders. Finding No. 6 notes that "[a]lthough the rough grading specifications stated that such figures were approximate only, such figures did not appear to be round, ball park figures but irregular amounts that appear to be precisely calculated." Additionally, he found that the on-site inspections would not have revealed any information to the bidders that was not on the plans, and that "to have

erroneous information provided to them by defendant. We will not overturn the district judge where there is substantial evidence to support his findings and conclusions. Marta v. Smith (1980), ____ Mont.____, 622 P.2d 1011, 1015, 38 St.Rep. 28, 32.

The order of the District Court awarding the contractors the total cost of overrun is affirmed.

_____
Chief Justice

We concur:

_____
_____
_____
_____
Justices

- 8 -