660 P.2d 598

**Arthur CASAREZ and Lucy Casarez, Plaintiffs-Appellants,**

**v.**

**Blas GARCIA and Cecil Garcia, Defendants-Cross-Appellants,**

**and**

**Rio Grande Valley Bank, and the Estate of Oakley P. Guillory, Deceased, Defendants-Appellees.**

**Nos. 5709, 5721.**

Court of Appeals of New Mexico.

Jan. 27, 1983.

Certiorari Denied March 9, 1983.

Harold B. Albert, Dale B. Dilts, Albuquerque, for plaintiffs-appellants.

John Wesley Gurley, Albuquerque, for defendants-cross-appellants.

## OPINION

DONNELLY, Judge.

Both the plaintiffs, Arthur and Lucy Casarez, and the defendants, Blas Garcia and Cecil Garcia, pursue separate appeals herein. The plaintiffs appeal from an order directing a verdict in favor of defendant Rio Grande Valley Bank (Bank); the Garcias appeal an order refusing to grant a directed verdict in their favor and from an order denying their motion for a new trial. This court on its own motion has consolidated the two cases on appeal.

The plaintiffs' sole issue on appeal challenges the propriety of the trial court's granting of a directed verdict in favor of the defendant Rio Grande Valley Bank. The cross-appeal of the Garcias allege as error: (1) failure to grant a new trial; and (2) refusal of the trial court to grant their motion for directed verdict. We reverse as to both appeals.

The plaintiffs filed suit against the Garcias and the Estate of Oakley P. Guillory, deceased, alleging that the defendants had

breached a written contract to properly construct a home for them in Jemez Springs. The first amended complaint asserted that Blas Garcia falsely represented he was acting through a licensed contractor, and that, after commencing the construction, defendants Blas Garcia and Guillory performed the work in a negligent and unworkmanlike manner so that the project was "red-tagged" and halted by state building inspectors. The amended complaint alleged that the Garcias and Oakley P. Guillory conspired to defraud the plaintiffs of monies advanced in the construction of the residence; plaintiffs sought both actual and punitive damages. The estate of Oakley P. Guillory was never served with process.

The plaintiffs also alleged for their cause of action against the Bank that the defendants Garcia and Guillory conspired to defraud plaintiffs with a false loan for $25,000 and to wrongfully deprive plaintiffs of the loan proceeds. Plaintiffs alleged they specially indorsed a cashier's check owned by them to Albuquerque Fence Company and that Blas Garcia forged the company's name thereon. Plaintiffs further allege that the Bank wrongfully and negligently failed to make adequate inquiry or investigation before making payment of the cashier's check in the sum of $25,000. Plaintiffs allege the check was signed by Blas Garcia, without authorization, on behalf of Albuquerque Fence Company and the instrument was then fraudulently delivered to Cecil Garcia, who presented it to the Bank for payment.

The Garcias and the Bank each filed answers denying liability. The Bank filed a cross-claim against defendant Cecil Garcia seeking indemnity in the event it should be required to pay damages to the plaintiffs. Prior to trial, the court granted the Bank's motion for summary judgment on its cross-claim against Cecil Garcia.

Following a jury trial, the trial court granted the Bank's motion for directed verdict against the plaintiffs. After completing their deliberations, the jury returned verdicts in favor of the plaintiffs (1) against Cecil Garcia in the sum of $19,000 actual damages and $13,000 punitive damages; and (2) against Blas Garcia in the sum of $25,000 actual damages and $13,000 punitive damages. In addition to filling out verdict forms in favor of the plaintiffs, the jury foreman also signed two verdict forms which found the issues in favor of each of the defendants, Blas Garcia and Cecil Garcia, but marked on each of these two verdicts the word "guilty." On the forms of verdict returned in favor of the plaintiffs, the jury foreman filled out the award of actual and punitive damages agreed upon by the jury—but failed to sign the forms of verdict for plaintiffs because no signature line had been typed on the two forms.

The total actual damage awards against the two Garcias and returned by the jury exceeded the amounts sought by plaintiffs in their pleadings. Plaintiffs' first amended complaint had asked for $25,000 actual damages jointly and severally against all the defendants, together with $100,000 punitive damages. When the trial court reviewed the forms of verdict returned by the jury, the court noted that although the foreman had inserted on the forms of verdict an award of both actual and punitive damages in favor of the plaintiffs he had failed to sign the verdicts because the signature lines had been inadvertently omitted from the verdict forms provided to the jury.

On December 22, 1981, the defendants Blas Garcia and Cecil Garcia filed motions seeking a new trial, for the entry of judgment in accordance with the defense forms of verdicts which had been signed by the jury foreman, and alternatively for the entry of judgment N.O.V. in favor of the Garcias. The trial court denied each of the motions, and on February 23, 1982, a final judgment was entered in favor of the plaintiffs.

I. *Plaintiffs' Appeal*

The single issue raised by the plaintiffs on appeal challenges the propriety of the trial court's order granting a directed verdict in favor of the Bank. The plaintiffs contend that the Bank negligently cashed a cashier's check in the sum of $25,000 with-

out properly investigating the indorser and without requiring a proper indorsement. Plaintiffs argue that their claims against the Bank and the evidence presented raised questions which should have been submitted to the jury.

Plaintiffs contend that Blas Garcia represented to them that he was a representative of Albuquerque Fence Company and that relying upon such representation they entered into a written contract dated July 4, 1979, with the company with the understanding that the company would construct a home for them in Jemez Springs for the sum of $48,875.66, plus tax. Blas Garcia later introduced the plaintiffs to Cecil Garcia who agreed to make a loan to plaintiffs to be used as a down payment under the construction contract.

George Martinez, Sr., the president of Albuquerque Fence Company, testified that his company was a domestic corporation and had never been licensed as a general contractor in New Mexico. He further testified that neither Blas Garcia nor Cecil Garcia were ever officers or directors of the corporation or in any way affiliated or employed by it. Albuquerque Fence Company makes no claim to the check.

As shown by the record, Cecil Garcia obtained a $25,000 loan from the Bank in the form of a $25,000 cashier's check payable to himself. Cecil Garcia took the check to a title company, arranged to loan $25,000 to the plaintiffs, and obtained a promissory note from them to evidence this indebtedness. Cecil Garcia then indorsed the cashier's check: "Pay to the order of Lucy N. Casarez, Cecil Garcia". Upon delivery of the check to Lucy Casarez, she indorsed the check: "Pay to the order of Albuquerque Fence Co., Lucy N. Casarez". Lucy Casarez then handed the check to Blas Garcia. Blas Garcia testified that after obtaining the check from Lucy Casarez, he followed the instructions of Cecil Garcia and indorsed the check: "Alb. Fence Co." Thereafter, Blas Garcia gave the check to Cecil Garcia, who signed his own name under the words "Alb. Fence Co." and later presented the check to the Bank in exchange for $5,000 in cash and four $5,000 cashier's checks.

The plaintiffs contend that the language placed on the check by Lucy Casarez, "Pay to the order of Albuquerque Fence Co.", preceding her signature constituted a special indorsement and that the check could be further negotiated only by a proper indorsement by an authorized representative of the company. Because of the special indorsement, plaintiffs argue, the action of the Bank in cashing the check without investigating or verifying the authority of Cecil Garcia to negotiate the check on behalf of Albuquerque Fence Company was sufficient to raise an issue as to negligence on the part of the Bank. The plaintiffs further assert that the writing of the words "Alb. Fence Co." by Blas Garcia and the signature thereafter by Cecil Garcia amounted to an unauthorized signature or indorsement which invalidated the lawful negotiation of the check and rendered the Bank liable to the plaintiffs for the amount of the check.

In response to these assertions, the Bank contends that it took the check as a holder in due course, that is, that it took the instrument for value and in good faith, without notice of any claims to or defenses against the check or notice of its dishonor. § 55–3–302, N.M.S.A.1978. As shown by the record, the trial court granted a directed verdict in favor of the Bank upon the basis that it found as a matter of law that the Bank was "a holder in due course."

Under the facts herein, the Bank was not a holder in due course. Section 55–1–201(20), N.M.S.A.1978, defines a "holder" as "a person who is in possession of a document of title or an instrument * * issued or indorsed to him or to his order or to bearer or in blank." The cashier's check issued by the Bank was not drawn to its order, nor was the check ever validly issued or indorsed to it. The Bank in issuing the cashier's check to Cecil Garcia acted as both drawer and drawee, since a cashier's check constitutes a draft drawn by the Bank upon itself. Upon the subsequent presentment of the check, the Bank was not a holder in due course. §§ 55–1–201(20), 55–3–302,

55–3–303 and 55–3–304, N.M.S.A.1978; *see Thieme v. Seattle-First National Bank,* 7 Wash.App. 845, 502 P.2d 1240 (1972); *Nat. Bank of Ga. v. Refrigerated Transport,* 147 Ga.App. 240, 248 S.E.2d 496 (1978).

■ Since the plaintiff Lucy Casarez specially indorsed the cashier's check "Pay to the order of Albuquerque Fence Co., Lucy N. Casarez," and purportedly without authority, Blas Garcia placed the indorsement of "Alb. Fence Co." thereon, the indorsement, if unauthorized, was inoperative to pass title to the instrument to Cecil Garcia. A special indorsement specifies to whom or to whose order it makes the instrument payable; it becomes payable to the order of the special indorsee and may be further negotiated only by his indorsement. § 55–3–204, N.M.S.A.1978. As stated in the Official Comment to U.C.C. § 3–204, "The principle here adopted is that a special indorser, as the owner even of a bearer instrument, has the right to direct the payment and to require the indorsement of his indorsee as evidence of the satisfaction of own obligation." Under the Uniform Commercial Code, a "person" includes an individual or an organization. § 55–1–201(30), *supra.*

■ According to the testimony of Blas Garcia, the defendant, Cecil Garcia instructed Blas Garcia to sign the name of "Alb. Fence Co." on the instrument. Blas Garcia testified that he thought he had the authority to sign checks on behalf of Albuquerque Fence Company, although this was denied by George Martinez, Sr., president of Albuquerque Fence Company. Normally, the question of agency is one of fact to be determined by the finder of fact under the evidence and circumstances of each case. *Fryar v. Employers Ins. of Wausau,* 94 N.M. 77, 607 P.2d 615 (1980). Conflicting facts pertaining to the existence or non-existence of an agency relationship, whether actual or apparent, present a question of fact for the jury. *Trans Union Leasing Corp. v. Hamilton,* 93 N.M. 310, 600 P.2d 256 (1979); *Pribble v. Aetna Life Insurance Company,* 84 N.M. 211, 501 P.2d 255 (1972).

Under the Uniform Commercial Code, § 55–3–201(1), N.M.S.A.1978, a transferee who has notice of any illegality affecting the instrument takes only such rights as the transferor had therein.

If the defendant Blas Garcia was without authority to indorse the check on behalf of Albuquerque Fence Company, the unauthorized indorsement of Albuquerque Fence Company was also ineffective to pass title to the instrument to Cecil Garcia, since he allegedly took the instrument with knowledge of the unauthorized signature by Blas Garcia and with notice that the check had been specially indorsed to Albuquerque Fence Company. Section 55–3–404, N.M.S. A.1978, provides:

(1) Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it; but it operates as the signature of the unauthorized signer in favor of any person who in good faith pays the instrument or takes it for value.

As between the plaintiff Lucy Casarez, and Cecil Garcia, the plaintiff remained the owner of the check until the designated special indorsee indorsed the instrument. The unauthorized signature of the special indorsee rendered that signature inoperative under § 55–3–404(1) and prevented the further negotiation of the check since negotiation requires the proper indorsement of all special indorsees.

■ As noted in 6 E, W. Willier & F. Hart, *U.C.C. Reporter-Digest* § 3–419, Annot. 33, Comment (1982), "when a bank pays on an instrument bearing a forged indorsement, the owner of the instrument may sue the drawee * * * or drawer * *." The plaintiff as the true owner of the cashier's check had a right to bring an action for conversion or negligence against the Bank as drawee when it paid on the unauthorized indorsement of Albuquerque Fence Company. § 55–3–419(1)(c), N.M.S.A.1978; *Thornton & Co. v. Gwinnett Bank & Trust Co.,* 151 Ga.App. 641, 260 S.E.2d 765 (1979); *Salsman v. National Community Bank of Rutherford,* 102 N.J.Super. 482, 246 A.2d 162 (1968); *Gresham State Bank v. O and K*

*Construction Co.,* 231 Or. 106, 370 P.2d 726 (1962); *Prudential Ins. Co. of Amer. v. Marine National Exch. Bank,* 315 F.Supp. 520 (E.D.Wis.1970); *see generally,* 2 F. Hart & W. Willier, *Commercial Paper Under the U.C.C.* § 12.35 (1982). Absent negligence on the part of an indorser, a bank converts an instrument when it pays over an unauthorized indorsement. *Gast v. American Casualty Company of Reading, PA.,* 99 N.J. Super. 538, 240 A.2d 682 (1968).

■ A drawee bank is not a "holder" and therefore not a "holder in due course" of a cashier's check where negotiation of the check is precluded at the time of transfer to the bank by reason of the forged signature of the special indorsee. *See Tubin v. Rabin,* 382 F.Supp. 193 (N.D.Tex.), 389 F.Supp. 787 (N.D.Tex.1974) (Supplemental Opinion), *aff'd* 533 F.2d 255 (5th Cir.1976); *Maddox v. First Westroads Bank,* 199 Neb. 81, 256 N.W.2d 647 (1977); *see also* D. Whaley, *Forgery and the Holder in Due Course: The Commercial Paper Puzzle,* 78 Com.L.J. 277 (1973).

In *Tubin v. Rabin, supra,* plaintiff's attorney purchased a cashier's check on plaintiff's behalf naming himself as the original payee. The attorney specially and restrictively indorsed the check. The court held that the plaintiff as the true owner of the cashier's check could bring an action for conversion against the payee bank when the check was paid on a forged indorsement of a special co-indorsee named in the payee's special and restrictive indorsement. The court also held that the bank was not a "holder" or a "holder in due course" of a cashier's check where negotiation of the check was precluded at the time of transfer to the bank by reason of the forged signature of a special co-indorsee.

■ Whether the Bank acted in accordance with reasonable commercial standards in failing to check the validity of the indorsements on the cashier's check, whether it had converted the check contrary to § 55–3–419(1)(c), *supra,* and whether the defendant Blas Garcia had authority to indorse the cashier's check on behalf of Albuquerque Fence Company presented factual issues which plaintiffs were entitled to have decided by the jury. Plaintiffs' complaint was sufficient to state a cause of action against the Bank under § 55–3–419(1)(c), *supra,* and the evidence was sufficient to warrant submission to the jury of plaintiffs' claim against the Bank.

■ When considering a motion for a directed verdict in favor of a defendant, if reasonable minds may differ as to the conclusion to be reached under the evidence or permissible inferences to be drawn therefrom, the question is one for the jury. In ruling on a motion for directed verdict the court must consider the evidence and inferences therefrom in a light most favorable to the party resisting the motion. *Bell v. Ware,* 69 N.M. 308, 366 P.2d 706 (1961); *Simon Neustadt Fam. Ctr. v. Bludworth,* 97 N.M. 500, 641 P.2d 531 (Ct.App.1982); *Smith v. Loos,* 78 N.M. 339, 431 P.2d 72 (Ct.App.1967); *see also* N.M.R.Civ.P. 50(a), N.M.S.A.1978. The order granting a directed verdict in favor of the Bank was error.

## II. *Appeal of Garcias*

### (1) *Failure to Grant New Trial*

■ The defendants, Blas Garcia, and Cecil Garcia, contend that the trial court erred in (1) failing to grant a new trial because the verdicts returned by the jury were indefinite and uncertain, and (2) refusing to grant their motion for directed verdict. The trial court properly denied defendants motions for directed verdict against plaintiffs. The plaintiffs presented proper evidence warranting submission of their claims against defendants to the jury.

■ The Garcias argue in support of their contention that they were entitled to a new trial because the jury returned verdict forms both in favor of and against the plaintiffs, and the trial court erred in not directing the jury to return to the jury room to resolve the obvious ambiguity therein and to determine which forms of verdict in fact reflected the jury's verdict. We agree.

Under the facts herein, the jury signed all submitted forms of verdict finding the issues in favor of the Garcias, and then the foreman was directed by the court to sign the verdict forms finding the issues in favor of the plaintiffs, without directing that the jury return to the jury room to see if the other members of the jury agreed upon the corrected forms of verdict. The conflicts between the several verdict forms necessitate the granting of a new trial.

As held in *Sanchez v. Martinez,* 99 N.M. 66, 653 P.2d 897 (Ct.App.1982), "[u]pon return of a mistaken or ambiguous verdict by the jury[,] the trial court should direct the jury to return to the jury room to agree upon a corrected form of verdict upon further deliberation."

Although the court polled the six member jury at the request of counsel for the Garcias, unfortunately this did not clarify which forms were in fact intended by the jury to constitute their final verdicts.

As shown by the record:

*The Court:* Hand the verdict please to Mr. Springer. We seem to have an inconsistency here. I'll announce the verdicts. By the way, these two verdict forms [the two forms for plaintiffs] did not have a form for signature, gentlemen. I'm going to ask the foreman to sign the verdict right now.

*Mr. Albert:* That's fine, Your Honor.

*The Court:* That's the Court's mistake. If you'll sign your name as foreman on the bottom of both of those forms [plaintiffs'] please.

*Mr. Guzowski* [foreman]: All right.

*The Court:* Thank you. Four forms of verdict have been signed. I'll read each of them in order. The first form, says "We find for the defendant, Blas Garcia," with the word written in handwriting, "guilty" signed by the foreman. The next form of verdict says, "We find for the defendant Cecil Garcia," with the word written in "guilty" signed by the foreman.

The third form of verdict says, "We find for the plaintiffs in the sum of $19,000 actual damages against the defendant Cecil Garcia. We find for the plaintiffs in the sum of $25,000 actual damages against the defendant Blas Garcia."

The fourth form of verdict says, "We find for the plaintiffs in the sum of $13,000 punitive damages against the defendant Cecil Garcia, and we find for the plaintiffs in the sum of $13,000 punitive damages against the defendant Blas Garcia," signed by the foreman in each case.

Does either side wish to poll the jury?

*Mr. Dilts:* Yes, Your Honor, we'd like to have the jury polled.

*The Court:* Very well. Eugene Tuma, is that your verdict?

*Mr. Tuma:* Yes, it is, Your Honor.

*The Court:* Thank you. Robert Guzowski, is that your verdict?

*Mr. Guzowski:* On those second two sheets you read?

*The Court:* All of the sheets.

*Mr. Guzowski:* All of the sheets, yes, sir.

*The Court:* Yeah. Very well. Jonathon Jastram, is that your verdict?

*Mr. Jastram:* Yes, sir.

*The Court:* Thank you. Theresa Rutherford, is that your verdict?

*Ms. Rutherford:* Yes, sir.

*The Court:* Michael Day, is that your verdict?

*Mr. Day:* Yes, it is, Your Honor.

*The Court:* Lori Osburn, is that your verdict?

*Ms. Osburn:* Yes, it is.

[Emphasis supplied.]

The responses of the jurors did not erase the ambiguity as to which of the four forms of verdict were intended to reflect the true verdict of the jury. The record fails to indicate conclusively that five or more jurors joined in the determination the plaintiffs were intended to be the prevailing party or that they concurred in the award of damages. Upon examination of the various forms of verdict signed by the jury foreman and from a review of the

record during the polling of the jury, the exact intentions of the jury in returning the verdicts are ambiguous. The courts in New Mexico follow the general rule applicable to defects in the form or contents of verdicts, i.e., that the verdict should leave no question as to the clear intent of the jury to render an award of damages and as to the amount of damages. *Sanchez v. Martinez, supra; see also* N.M.R.Civ.P. 49, 1978 (1982 Cum.Supp.). Under the circumstances a new trial should have been granted to the Garcias as to all issues.

The orders directing a verdict in favor of the Bank and the denial a new trial to the defendants Garcias due to ambiguity in the verdicts was error. The trial court's denial of defendants motions for directed verdict against plaintiffs was proper. We reverse and remand for a new trial as to each of the parties.

IT IS SO ORDERED.

HENDLEY and BIVINS, JJ., concur.