671 P.2d 1151

STATE ex rel. Conley Lott NICHOLS Machinery Company and Conley Lott Nichols Machinery Company, a Corporation, Individually, Plaintiffs-Appellees and Cross-Appellants

v.

SAFECO INSURANCE COMPANY OF AMERICA and J.H. Ryan & Sons, Inc., Defendants-Appellants and Cross-Appellees.

No. 5836.

Court of Appeals of New Mexico.

Sept. 8, 1983.

Certiorari Denied Oct. 20, 1983.

Robert C. Poole, Daymon B. Ely, Poole, Tinnin & Martin, P.C., Albuquerque, for defendant-appellant and cross-appellee, Safeco Ins. Co.

Michael E. Vigil, Marchiondo & Berry, P.A., Albuquerque, for defendants-appellants and cross-appellees J.H. Ryan & Sons, Inc.

Peter J. Adang, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, for plaintiffs-appellees and cross-appellants.

## OPINION

DONNELLY, Judge.

Conley Lott Nichols Machinery Company (Lessor) brought suit against J.H. Ryan & Sons, Inc. (Contractor) and Safeco Insurance Company of America (Surety) for alleged failure to pay amounts due under heavy equipment leases. The Surety was joined under its obligation on a payment bond pursuant to NMSA 1978, § 13–4–19. Lessor filed suit against Contractor alleging that Contractor owed rental payments of $234,750 for the last two months of the lease periods, plus charges for overtime use of the equipment, and attorneys fees for enforcement of the contract. The Contractor denied Lessor's allegations, asserted a number of affirmative defenses, including negligent misrepresentation by Lessor, and counterclaimed against Lessor to recover damages for breach of contract and for alleged negligent misrepresentation. The jury returned a verdict in favor of Lessor in the amount of $289,739.77 against Contractor and Surety, and also found for Lessor and against the Contractor on its counterclaims. All parties herein have filed separate appeals from the judgment entered on the jury verdict.

The Contractor has raised six points and the Surety nine issues on appeal; Lessor has raised two issues on its cross-appeal. We discuss (1) Contractor's claim of error as to instructions; (2) refusal to admit evidence of custom and usage on behalf of Contractor in construing the written contracts; (3) failure to grant directed verdict and judgment N.O.V. to Surety; and (4) Lessor's right to prejudgment interest. We reverse.

On August 6, 1980, the Contractor agreed to lease seventeen pieces of heavy construction equipment from Lessor, executing a separate contract for each item of equipment. Accompanying each lease agreement was a separately executed option to purchase the equipment involved. The written contracts provided that Contractor agreed to lease the machinery for eight months during the performance of a highway construction project between Socorro and Truth or Consequences. The contracts expressly provided that the rentals were "predicated on such equipment being operated not in excess of ten hours per day nor more than two hundred hours per month," without liability for an increased rental price. The Contractor, by working overtime, finished the construction project before schedule and returned the eight heavy-duty scrapers prior to the expiration of the full term of the lease agreements.

### I. Instructions on Negligent Misrepresentation

Both Contractor and Surety claim the trial court erred in instructing the jury as to the burden of proof on Contractor's defense and counterclaim of alleged negligent misrepresentation against Lessor.

Contractor alleged that Lessor breached its contract and guaranty; further it alleged that Lessor negligently misrepresented the length of time necessary to complete the work and the cost of the projects. Contractor claimed to have relied upon the representation. The issue of negligent misrepresentation was submitted to the jury. The Court's Instruction No. 6 provided in part: "In a case of this nature, the defendant has the burden of proving his claim by clear and convincing evidence." The Contractor had submitted a correct instruction to the trial court setting forth the appropriate burden of proof on its claims of negligent misrepresentation; however, the instruction was refused.

The tort of negligent misrepresentation is recognized in New Mexico. *Maxey v. Quintana,* 84 N.M. 38, 499 P.2d 356 (Ct. App.1972); NMSA 1978, UJI Civ. 8.19 (Repl.Pamp.1980). The degree of proof required of a party asserting negligent misrepresentation is a preponderance of the evidence. Allegations of fraudulent misrepresentation, however, are required to be proven by clear and convincing evidence. *See* Use Note, NMSA 1978, UJI Civ. 8.20 (Repl.Pamp.1980). An action for negligent misrepresentation differs from the tort of deceit or fraud.[1] Negligent misrepresentation is grounded in negligence rather than an intent to mislead. *Sims v. Craig,* 96 N.M. 33, 627 P.2d 875 (1981); *see Treider v. Doherty and Company,* 86 N.M. 735, 527 P.2d 498 (Ct.App.1974); *compare Hughes v. Holt,* 140 Vt. 38, 435 A.2d 687 (1981).

Although the trial court also gave Instruction No. 5, NMSA 1978, UJI Civ. 3.6 (Repl.Pamp.1980), instructing the jury on the preponderance of evidence standard of proof, the Court's Instruction No. 6 was so worded as to mislead the jury and require that Contractor's negligent misrepresentation claims be proven by clear and convincing evidence. *See Embrey v. Galentin,* 76 N.M. 719, 418 P.2d 62 (1966). When an instruction fails to distinguish between the claims or duties of several parties it is incorrect. *See Dessauer v. Memorial General Hospital,* 96 N.M. 92, 628 P.2d 337 (Ct.App. 1981). Lessor contends that even if there was an error in the court's instruction as to the burden of proof on the issues of negligent misrepresentation, the contractor failed to present a prima facie case establishing negligent misrepresentation. We disagree. Contractor introduced sufficient evidence to warrant submission of this issue to the jury. A party is entitled to instructions on its theory of the case when there is evidence to support it in the record. *Adams v. United Steelworkers of America, AFL–CIO,* 97 N.M. 369, 640 P.2d 475 (1982).

The error in the instructions requires reversal of the judgment of the Lessor as to both the Contractor and its Surety.

## II. *Evidence of Custom and Usage*

Since we reverse on the basis of Point I, we need address only one of Contractor's other claims, in the event that the issue again arises at the new trial. Contractor contends that the trial court erred in refusing to allow the introduction of evidence of custom and usage in the industry in determining its contractual liability to Lessor.

Contractor's first defense to the original complaint claimed modification of the contracts "by trade usage and by custom of the industry." Contractor's eighth defense to the first amended complaint alleged that Lessor's claims were barred "by industry practice." In response, Lessor filed a motion in limine prior to trial seeking to exclude trial evidence of custom or usage in the trade permitting early return of the equipment in return for an abatement of rent; the motion was granted.

At trial, Contractor made a general offer of proof contending that, according to usage in the trade, a lessor will allow a lessee to return heavy construction equipment prior to the express expiration date of their written lease agreement and thereby terminate lessee's liability for rental payments. Relying in part on the Uniform Commercial Code (U.C.C.), NMSA 1978, §§ 55–1–205 and 55–2–202, the Contractor asserts that a portion of the obligation sued for by Lessor is not in fact due because of trade usage and custom. Lessor counters that the contracts are unambiguous, and relies upon the common law parol evidence rule which excludes extrinsic evidence without a showing of contract ambiguity. Further, Lessor states, the U.C.C. sections cited apply not to *leases* of goods, but only to *sales* of goods.

---

1. In Committee Comment (a) to Restatement (Second) of Torts § 552 (1977) pertaining to negligent misrepresentation, it is noted:

    The liability stated in this Section is more restricted than that for fraudulent misrepresentation * * *. When there is no intent to deceive but only good faith coupled with negligence, the fault of the maker of the misrepresentation is sufficiently less to justify a narrower responsibility for its consequences.

The Contractor's tender was properly rejected on two grounds.[2] First, an offer to prove facts which state mere conclusions is too general and should properly be rejected; the substance of the evidence must be made known to the trial court. NMSA 1978, Evid.R. 103(a)(2); *De La O v. Bimbo's Rest.*, 89 N.M. 800, 558 P.2d 69 (Ct.App.1976). An offer of proof must show what the party expects to prove and that the evidence is material and relevant. *Stephen W. Brown Radiology Assoc. v. Gowers*, 157 Ga.App. 770, 278 S.E.2d 653 (1981).

Second, although the U.C.C. parol evidence provisions relied upon by Contractor may in appropriate cases modify the terms of a written contract,[3] under the facts herein the trial court correctly denied the attempted modification. We adopt the reasoning of *Walter Heller & Co. v. Convalescent Home*, 49 Ill.App.3d 213, 8 Ill.Dec. 823, 365 N.E.2d 1285 (1977). There, the court ruled that portions of the provisions of U.C.C., Article Two, were applicable to leases of equipment on the theory that it would be an anomaly to subject this body of commercial transactions to different rules of law from that governing sales. *Id.*, (quoting *Hertz Commercial Leasing Corp. v. Transportation Credit Clearing House*, 59 Misc.2d 226, 229, 298 N.Y.S.2d 392, 395 (N.Y.Civ.Ct.1969) (*rev'd on other grounds* )); *see also Solomon Refrigeration v. Osburn*, 148 Ga.App. 772, 252 S.E.2d 686 (1979). Here, where each lease agreement is accompanied by a "privilege of purchase" contract which incorporates the term of the lease, we hold that the U.C.C. does apply.

"A usage of trade" is "any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question." § 55–1–205(2). "The express terms of an agreement and an applicable * * * usage of trade shall be construed wherever reasonable as consistent with each other; but *when such construction is unreasonable, express terms control* * * * usage of trade * * *." (Emphasis supplied.) NMSA 1978, § 55–1–205(4).

Evidence as to usage of trade is admissible in construing a written contract (whether or not the language is ambiguous) to add to, subtract from or qualify the terms of the agreement or to explain their meaning, even if contradictory to the words therein. § 55–2–202; *see generally* R. Duesenberg & L. King, *Sales & Bulk Transfers Under the U.C.C.* § 4.08[3][b] (1982); Hart & Willier, *Forms* at ¶ 21.06; J. White and R. Summers, *Handbook of the Law under the U.C.C.* § 3–3 (2nd ed. 1980). Parol evidence is not admissible, however, when it would change the basic meaning of the contract and produce an agreement wholly different from, wholly inconsistent with the written agreement and which tends to distort the expressly stated written understanding of the parties. *Recreatives, Inc. v. Travel-On Motorcycles Co., Inc.*, 29 N.C.App. 727, 225 S.E.2d 637 (1976).

The lease contracts at issue here clearly specify the amount of the rental price and a "rental period of 8 months(s)." The written contract terms leave no room for a contrary construction consistent with Contractor's claimed usage of trade. The trial court correctly denied the contractor's proffer.

III. *Denial of Directed Verdict as Judgment N.O.V.*

Because a new trial will be necessary on the merits, we address Surety's claim of

---

**2.** Contractor's entire offer of proof was:
I just want to make it clear for the record that I would now ask him why do you think or why did you form a thought that you couldn't be billed for that equipment and that the witness would probably say among the other things that he said that it was his understanding and knowledge of the industry that he would not be billed for these months that he didn't use the equipment.

**3.** The legislature has expressed a clear intent to clarify and modify the common law parol evidence rule as it applies to commercial transactions by adopting the sales section, Article Two, of the U.C.C. NMSA 1978, § 55–2–202; F. Hart & W. Willier, *Forms and Procedures under the U.C.C.* ¶ 12.02 (1983); *see also* NMSA 1978, § 55-1-205.

error raised in its separate appeal concerning its liability under its bond issued to Contractor, pursuant to § 13–4–19. Surety contends that the trial court erred in allowing the jury to consider evidence against it as to punitive damages and for attorneys fees.

(A) The trial court instructed the jury in Instruction No. 33, in part, that if "plaintiff should recover either actual or nominal damages, and if you further find that the acts of defendant were maliciously intentional, oppressive or committed recklessly with a wanton disregard of the rights of the plaintiff, then you may award exemplary or punitive damages * * *." The language of the instruction referred to "defendant"; significantly, it did not identify which of the two defendants the instruction applied to or whether it was applicable to both the Contractor and Surety. The Court's Instruction No. 2 further stated: "The Lessor Conley Lott Nichols claims * *. 5. Ryan wilfully and intentionally breached the lease contracts and is liable for punitive damages; and 6. That the defendant Safeco is liable under its bond for the amounts for which defendant J.H. Ryan & Son is also found liable."

The forms of verdict returned by the jury read: "We find for the plaintiff on the complaint in the sum of $289,739.77," and "We find for the plaintiff on the counterclaim." The verdict form as submitted to the jury did not differentiate which portion of the total damages award, if any, consisted of punitive damages.

Surety objected to the instructions of the trial court on the basis that their effect was to advise the jury that the liability of Surety was co-extensive with that of Contractor. As required by statute, Contractor obtained a surety bond from Safeco conditioned upon the performance and completion of its State Highway Department contract and guaranteeing payment against default under the contract and for payment of materials and supplies furnished. NMSA 1978, § 13–4–18.

■■■ The bond issued by Surety obligated it to pay "for all just claims for labor performed and materials and supplies furnished upon or for the work under ... the contract" and to indemnify and save harmless the State, its officers and employees, or for "any neglect or negligence on the part of said principals, their agents, servants, employees or sub-contractors * * * in the performance of said contract * * *." Neither the terms of the surety bond nor the statutory provisions requiring the surety bond obligated Surety for payment of punitive damages assessed against the Contractor. Although statutes requiring the filing of contractor's bonds and the terms of surety bonds are generally liberally construed to effect legislative intent and the purpose of the bond, clearly the language of the surety bond does not extend to liability for punitive damages. *See Brogan v. National Surety Co.,* 246 U.S. 257, 38 S.Ct. 250, 62 L.Ed. 703 (1918); *see also Annot.,* 70 A.L. R.2d 1370 (1960). The trial court erred in submitting Instructions Nos. 2 and 33, inferring that the liability of Surety was coextensive with that of Contractor.

■■■ Where it cannot be determined whether the jury's verdict was based upon an improperly submitted issue, a new trial must be granted. *Security Trust & Savings Bank v. Ravel,* 24 N.M. 221, 173 P. 545 (1918); *Bendorf v. Volkswagenwerk Aktiengeselischaft,* 88 N.M. 355, 540 P.2d 835 (Ct.App.1975).

(B) Surety also contends that the trial court erred in entering judgment adjudicating that Lessor could recover an award of attorney's fees under the surety bond. This issue is a matter of first impression in New Mexico. Each of the equipment lease agreements entered into between Lessor and Contractor contained a provision specifying that, in the event of any default, Lessor may declare all obligations immediately due and performable, including the payment of rent for the full rental period, in addition to collection of "reasonable attorney's fees should the account be turned over to an attorney for collection." Neither the payment bond nor New Mexico statutes requiring the securing of bonds by contractors on public work's contracts expressly

refer to payment of collection costs or attorney's fees. Lessor, however, argues that it incurred attorney's fees up to the time of trial exceeding the sum of $35,000, all as a direct result of the litigation herein.

In *United States ex rel. Sherman v. Carter,* 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957), the court held that the trustees of an employee's health and welfare fund could recover fund contributions under a Miller Act bond as payment due for labor services under a collective bargaining agreement, and that the trustees could recover attorney's fees as provided for in the fund trust agreement. The court held that under the language of the federal Miller Act providing that a person furnishing labor or material "who has not been *paid in full* therefor * * * shall have the right to sue on such payment bond * * * for the sum or sums *justly due him* * * *." Reasonable attorney's fees should be included where the written terms of the contract sued upon expressly provided for the allowance of attorney's fees.

The Little Miller Act (§ 13-4-19) adopted in New Mexico, is modeled after the federal Miller Act, 40 U.S.C. §§ 270a through d 1976 and Supp. IV 1980. *State ex rel. W.M. Carroll & Co. v. K.L. House Construction Co., Inc.,* 99 N.M. 186, 656 P.2d 236 (1983).

The statutory bond required of contractors performing public work in New Mexico contains language similar in part to that imposed under the federal Miller Act. Section 13-4-19, the "Little Miller Act" specifies in part:

> Every person, firm or corporation who has furnished labor or material in the prosecution of work provided for in such contract, in respect of which a payment bond is furnished under Section 13-4-18 NMSA 1978, and who has not been paid in full therefor * * * shall have the right to sue on such payment bond for the amount of the balance thereof unpaid at the time of the institution of such suit, and to prosecute such action to final execution and judgment for the sum or sums justly due him * * *.

The rationale adopted by the Court in *United States ex rel v. Carter* is applicable to construction of § 13-4-19 and the allowance of reasonable attorney's fees where, as here, the lease contracts expressly provide for the collection of attorneys fees. The obligations of a surety under its bond are construed strictly in favor of the beneficiaries. *State ex rel. Carroll,* 656 P.2d at 237.

Surety also asserts on appeal that, even if attorney's fees are recoverable under the terms of the surety bond, Lessor failed to present sufficient evidence as to the reasonableness of the amount of fees sought or to prove that the claimed fees were incurred as a result of the breach of the leases sued upon.

Lessor introduced into evidence over Contractor's objection several exhibits detailing the amount of time expended and the amount of attorney's fees incurred incident to this action. Contractor objected on the grounds of a failure to establish reasonableness or to reasonably connect the expenses for attorney's fees with the claimed breaches of the lease agreement. In breach of contract suits where damages are sought for award of attorney's fees under the contract, the party seeking the award must prove the claim for attorney's fees with reasonable certainty in the same manner as other claimed damages. *See* NMSA 1978, UJI Civ. 18.2 (Repl.Pamp.1980).

In *Budagher v. Sunnyland Enterprises Inc.,* 93 N.M. 640, 603 P.2d 1097 (1979), a contract suit involving a claim for damages, the Supreme Court cited with approval a number of factors set forth in *Fryar v. Johnsen,* 93 N.M. 485, 601 P.2d 718 (1979), applicable to determining the reasonableness of a claim for attorney's fees. Some evidence concerning these factors is required in order to establish a prima facie case for the recovery of attorneys fees as an element of damages in contract actions. These factors include (1) the time and labor required—the novelty and difficulty of the questions involved and skill required; (2) the fee customarily charged in the locality

 

for similar services; (3) the amount involved and the results obtained; (4) the time limitations imposed by the client or by the circumstances; and (5) the experience, reputation and ability of the lawyer or lawyers performing the services.

 In asserting a claim for attorney's fees under an action in contract, the court may properly require a lessor to distinguish between the amount of attorney's fees incurred for prosecution of the complaint and counsel fees for defense of a counterclaim. *See Utah Farm Production Credit Ass'n v. Cox,* 627 P.2d 62 (Utah 1981).

#### IV. *Claim of Prejudgment Interest*

Finally, we address the contention raised on Lessor's cross-appeal that, since its claims were grounded upon a breach of contract to pay a definite sum of money, prejudgment interest should have been awarded as a matter of right.

NMSA 1978, § 56–8–5 (Cum.Supp.1982), which applies to this action filed February 17, 1981, provides for allowance of an award of interest or written contracts in accordance with the terms of the agreement, but not to exceed the amounts permitted in NMSA 1978, § 56–8–11 (Cum.Supp.1982). New Mexico follows the rule set out in Restatement of Contracts, § 337 (1932), to determine whether prejudgment interest is allowable for breach of a written contract. *Shaeffer v. Kelton,* 95 N.M. 182, 619 P.2d 1226 (1980).

 Where the parties have not by contract specified otherwise, interest in the statutory amount from the time performance was due is recoverable as damages for breach of contract where the amount of the money resulting from the breach is readily ascertainable by mathematical calculation from the contract or from established market prices of the subject matter. *Shaeffer v. Kelton,* 95 N.M. at 187, 619 P.2d 1226; *O'Meara v. Commercial Ins. Co.,* 71 N.M. 145, 376 P.2d 486 (1962). The foregoing rule was qualified in *Shaeffer,* to permit some discretion in the trial court where equitable factors are involved. In *Shaeffer,*

95 N.M. at 188, 619 P.2d 1226, the court held: "Although we hold that interest should be awarded as a matter of right in cases such as this one, we do not intend for interest to be awarded arbitrarily without regard for the equities of each particular situation."

The rule articulated in *Shaeffer* is applicable to the facts of the instant case.

The judgment is reversed and the cause remanded for a new trial consistent herewith.

IT IS SO ORDERED.

HENDLEY and LOPEZ, JJ., concur.