798 P.2d 1062

**WESTERN STATES MECHANICAL CONTRACTORS, INC., a New Mexico corporation, Plaintiff–Appellant,**

v.

**SANDIA CORPORATION, a New Mexico corporation d/b/a Sandia National Laboratories, Defendant–Appellee.**

No. 10117.

Court of Appeals of New Mexico.

Aug. 16, 1990.

Certiorari Denied Sept. 26, 1990.

Robert C. Kavanagh, Threet & King, Albuquerque, for plaintiff-appellant.

Richard C. Minzner, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for defendant-appellee.

## OPINION

CHAVEZ, Judge.

Western States Mechanical Contractors, Inc. (Western) brought an action against Sandia Corporation (Sandia) for negligent misrepresentation of certain plans and specifications published by Sandia to prospective bidders. Western used the plans and specifications in submitting a successful bid, and subsequently carrying out, a certain earthwork project for Sandia. Following the close of all the testimony, the trial court granted a directed verdict in favor of Sandia. Western appeals. We reverse.

On or about March 24, 1982, Western and Sandia entered into a contract for the construction of a "small arms firing range" to be located at Kirtland Air Force Base. Sandia furnished plans and specifications indicating that it would be necessary to remove approximately 2,400 cubic yards of rock as part of the work to be performed. Western claims to have relied on that representation in formulating its final approved bid as well as in requesting bids from subcontractors. Subcontractors alleging removal of 15,000 cubic yards of rock were paid on a quantum meruit basis

as a result of lawsuits against Western. Specifically, Western's complaint states that Sandia negligently misrepresented a material fact, i.e., the amount of rock to be removed, thereby causing damage to Western.

The sole issue on appeal is whether the trial court erred in directing a verdict for Sandia after all the evidence was presented to the jury.

Western's claim centers around the interpretation of Clifford E. Anderson's testimony. Mr. Anderson was an engineer for Scanlon and Associates, a civil engineering firm. Scanlon and Associates were retained by Sandia to gather information concerning the area to be excavated. Anderson engaged Albuquerque Testing Laboratories (ATL) to dig test holes in order to enable him to make computations regarding the amount of rock to be removed. In its report, ATL recommended that additional tests be made in order to better assess the amount of rock. No additional tests were done. Instead, Sandia changed the design substantially in order to stay away from the rock. The whole excavation was raised, and the location of the design changed.

The proceedings of this case on appeal have been somewhat unusual and disturbing. While this case was on summary calendar, we were presented with different versions of a critical portion of Anderson's testimony. Western directed us to a portion of Anderson's testimony where Anderson said he indicated concern to Sandia that there might be more rock than was shown on the plans, and Sandia has disputed the transcript of the testimony and has presented us with a different version. The court reporter testified that any interpretation could be correct and the district court ordered all versions of the testimony certified to this court. By the time this case was assigned to the limited calendar, we had four versions. Depending on the placement of a period or a comma, or whether Anderson used the word "final," "previous," or "preparation," different

meanings, crucial to the action below, can be ascribed to the testimony. We remanded the case to the trial court to settle the record. SCRA 1986, 12–211(C)(4). The trial court resolved the record. The true and correct version of the testimony is as follows:

Question: Did you ever indicate to Sandia that you were concerned about whether there was considerably more rock than was shown on the plans?

Answer: Not, not for this phase in the previous design, where we went considerably deeper we did indicate concern that there might be more rock in the areas than where we specifically tested.

In its brief, before the resolution of the record, Western argued that since different meanings can be gleaned from the different versions of the testimony, the jury, like the court reporter, could have reasonably interpreted the testimony in different ways and reached a verdict other than for Sandia. We do not address this argument as the record is settled.[1] We do, however, find that the trial court erred in directing a verdict for Sandia and removing the case from the jury.

■ As a preliminary matter, we came upon a provision in the record which appeared to disclaim a soil investigation report. We asked for supplemental briefing to explain this provision and whether it disclaimed the representation as to the amount of rock. Sandia explained that the disclaimer applies to the report prepared by ATL and that the rock estimate, computed by Clifford Anderson, was partially based on this report. They also argue that since the rock estimate was an interpretation of the soil investigation report, Western should not have relied on any representation regarding the character of the materials to be encountered. We disagree. While the soil report may have been disclaimed and no reliance on it was warranted, the plans, specifications and drawings representing the amount of rock to prospective bidders were part of the contract

---

**1.** It is not necessary for appellants to submit all of the trial transcripts or tapes on appeal.

SCRA 1986, 12–211(C)(1). We find the record sufficient to determine this appeal.

and were not disclaimed.[2] *See Hollerbach v. United States*, 233 U.S. 165, 34 S.Ct. 553, 58 L.Ed. 898 (1914) (general exculpatory clauses which disclaim any responsibility for the accuracy of data are of no effect when positive specifications were obviously intended to be used by bidders in making bids).

■ Exculpatory clauses do not preclude liability. *Hollerbach v. United States* held that exculpatory clauses in a contract do not relieve a defendant from liability when positive representations are made. The court stated that where the specification in a contract left no doubt as to what kind of material was behind a dam, reliance was justified and plaintiffs did not need to investigate the truth of this assertion. Requiring a contractor to examine the site and assume responsibility for the completion of the work does not overcome a positive representation as to job site conditions. *United States v. Spearin*, 248 U.S. 132, 137, 39 S.Ct. 59, 61, 63 L.Ed. 166 (1918). As indicated in Western's supplemental briefs, many courts have held that absent a disclaimer *specifically* disclaiming responsibility *for the contested information*, general disclaimers will not absolve defendant for positive and material representations upon which the contractor had a right to rely. *Hollerbach v. United States; McKee, Inc. v. City of Atlanta*, 414 F.Supp. 957 (N.D.Ga.1976); *Tonkin Const. Co. v. County of Humboldt*, 188 Cal. App.3d 828, 233 Cal.Rptr. 587 (1st Dist. 1987); *Midwest Dredging Co. v. McAninch Corp.*, 424 N.W.2d 216 (Iowa 1988). Here, the exculpatory clause, upon admission of both parties, applied to the soil investigation report performed by ATL. Both parties have also conceded that Sandia made a positive representation apart from the soil investigation report, in the plans and specifications as to the amount of rock to be encountered. This representation, based on estimates prepared by Scanlon and Associates, was not disclaimed.

■ In *McKee, Inc. v. City of Atlanta*, the court identified two conditions imposed by state courts on a claim for misrepresentation. First, the information supplied must be false or inaccurate and material to the contract; second, the bidder is not reasonably able to discover the true facts for itself. Here, there is no doubt that the information as to the amount of rock to be removed was false and material to the contract in the sense that it defined the scope of the project. *See Gardner–Zemke Co. v. State*, 109 N.M. 729, 790 P.2d 1010, 1014 n. 2 (1990).

■ Whether the contractor can discover the true facts through a reasonable investigation depends on the facts of each case. *McKee, Inc. v. City of Atlanta.* "If every bidder were required to perform all the investigations, even though the chance of receiving the bid was remote, the number of bids would decrease and the dollar amount of the bids would increase." *Id.* at 959; *see also Haggart Construction Co. v. State Highway Commission*, 149 Mont. 422, 427 P.2d 686 (1967). Some of the factors to consider are time constraints, the cost of investigation in comparison to the total bid price, and the detailed nature of the data supplied to the contractor. *See McKee, Inc. v. City of Atlanta*, and cases cited therein. Under the facts of this case, whether Western was reasonable in relying on the plans and specifications is a question for the jury.

■ Directed verdicts are not favored and should only be granted when the jury cannot reasonably and logically reach any other conclusion. *Strickland v. Roosevelt County Rural Electric Coop.*, 94 N.M. 459, 612 P.2d 689 (Ct.App.1980), *cert. denied*, 463 U.S. 1209, 103 S.Ct. 3540, 77 L.Ed.2d 1390 (1983). Our supreme court stated the proper standard in reviewing a directed verdict in *Melnick v. State Farm Mutual Auto Ins. Co.*, 106 N.M. 726, 749 P.2d 1105 (1988). *See also Skyhook Corp. v. Jasper*, 90 N.M. 143, 560 P.2d 934 (1977). In ruling upon and reviewing a motion for

---

**2.** In finding no justifiable reliance by Western, the dissent only looks to the provision regarding the soil investigation report and disregards the unequivocal estimate in the plans and drawing which are part of the contract.

a directed verdict, the court must consider all of the evidence. If there are conflicts or contradictions, they must be resolved in favor of the party resisting the motion. *Id.* If the evidence is uncontroverted, it must also be considered. "However, if any uncontradicted evidence, including the reasonable inferences deducible therefrom, may reasonably be interpreted in different ways, then the interpretation most favorable to the resisting party must be accepted". *Id.* at 146, 560 P.2d at 937. Interference with the jury function should be minimized, and before removing a case from the jury, it must be clear that no true issues of fact remain. *Id.*

Sandia argues that even if all the evidence is viewed in the light most favorable to Western, no jury could find that Sandia was negligent under the applicable jury instruction. SCRA 1986, 13–819 provides in part:

A negligent misrepresentation is one where the speaker has *no reasonable ground* for believing the statement made was true. [Emphasis added.]

Sandia claims it had reasonable grounds to believe its representation was true. It argues the test is not whether it was unreasonable in believing the truth of its representations but rather, whether Sandia had *any* reasonable grounds for believing its rock estimate was true. Therefore, Sandia argues, no reasonable jury could find that Sandia lacked a reasonable ground for its representation.

■ Sandia, however, has misinterpreted the test. The theory of liability for negligent misrepresentation is grounded in negligence. *Sims v. Craig,* 96 N.M. 33, 627 P.2d 875 (1981); *State ex rel. Nichols v. Safeco Ins. Co.,* 100 N.M. 440, 671 P.2d 1151 (Ct.App.1983). The issue in a negligence action is always one of reasonableness. The reasonableness or unreasonableness of anything is ordinarily a mixed question of law and fact which should be determined by a jury. *C & H Const. & Paving Co. v. Citizens Bank,* 93 N.M. 150, 597 P.2d 1190 (Ct.App.1979). Sandia may have had grounds on which to believe its representations were true, but whether those

grounds were reasonable depends on what a reasonable person would believe under all the surrounding circumstances. *Cf. Matter of Doe,* 89 N.M. 507, 554 P.2d 669 (Ct.App.1976); *Yucca Ford, Inc. v. Scarsella,* 85 N.M. 89, 509 P.2d 564 (Ct.App.1973) ("reasonable grounds" are facts and circumstances which would warrant a prudent and cautious person in believing something was true).

■ Before the supreme court's adoption of the jury instruction, we stated that the Restatement (Second) of Torts, Section 552 (1977), defines negligent misrepresentation in New Mexico. *Amato v. Rathbun Realty, Inc.,* 98 N.M. 231, 647 P.2d 433 (Ct.App.1982); *State ex rel. Nichols v. Safeco Ins. Co.* The Restatement defines negligent misrepresentation as a failure "to exercise reasonable care or competence in obtaining or communicating the information," and states that reasonable care and competence are ordinarily questions for the jury. We do not believe our supreme court intended to change the reasonableness standard applied in all actions for negligent misrepresentation when it drafted UJI 13–819. The theory urged by Sandia approaches a recklessness standard for this action.

■ Interpreting the record most favorably to Western's claim, we find that evidence exists upon which a jury could return a verdict for Western. That such a recovery may appear remote to the presiding judge should not deprive a party of a jury determination. *Melnick v. State Farm Mutual Auto Ins. Co.; Sanchez v. Gomez,* 57 N.M. 383, 259 P.2d 346 (1953). Anderson's testimony lends support to Western's claim of misrepresentation. It can support a conclusion that he was concerned there may be more rock in areas other than where the testing was done. The geologist's report also recommended additional tests. Apparently, the final design was substantially changed in order to avoid the rocky areas and no further tests were performed. A juror could find that when both ATL and Anderson recommended the need for further testing, Sandia did not act as a prudent and cautious

person in not following their recommendations and in believing the amount of rock to be only 2400 cubic yards.

██ Whether Sandia had reasonable grounds to believe its representation was true and whether Western justifiably relied on the representation are questions for the jury. *See C & H Const. & Paving Co. v. Citizens Bank.* The criteria are not what the jury could have concluded, but whether they could have concluded in any other way than for the beneficiary of the directed verdict. Under these circumstances, depriving plaintiffs of their right to have the jury weigh evidence, decide facts, determine reasonableness, and render a verdict was error.

The directed verdict is reversed and this case is remanded for a new trial.

IT IS SO ORDERED.

ALARID, J., concurs.

DONNELLY, J., dissents.

DONNELLY, Judge (dissenting).

I respectfully dissent. I would affirm the trial court's order granting a directed verdict in favor of the defendant Sandia Corporation.

Plaintiff's first amended complaint alleged that it bid on a construction contract to build a small arms firing range for Sandia and that Sandia negligently misrepresented in its contract, plans and drawings the amount of rock which would be necessary to be removed in constructing the project. As a result of the alleged misrepresentation, plaintiff claims that it successfully bid on the project and then encountered a larger quantity of rock than it anticipated. Plaintiff contends that it should be compensated on the basis of quantum meruit for the necessary additional rock removal.

At the close of all of the evidence in this case Sandia moved for a directed verdict. The trial court granted the motion, stating in part:

The representation with reference to the amount of rock that was available or disposed of, was not a representation

exclusively within the realm of Sandia. They in turn relied upon somebody else [Scanlon & Associates] * * * * [Our Supreme Court Jury Instruction on Negligent Misrepresentation] says: "A negligent misrepresentation is one where the speaker has no reasonable ground," I emphasize that, no reasonable ground, "for believing that the statement made was true." Twelve people, reasonable people, being selected in this case, cannot make a mistake with reference to the absence of any information that Sandia had to believe that the information was not true. I'm going to grant the defendant's motion to dismiss at this point.

The question posed on appeal in determining whether the directed verdict was proper, is whether the trial court abused its discretion in determining that the jury could not reasonably find, based on the evidence presented, that Sandia had no reasonable ground to believe that the information it provided to prospective bidders was true. In determining whether a directed verdict is proper, the trial court may grant the motion only after considering all the evidence presented in a light most favorable to the nonmoving party, and determining as a matter of law, that the evidence is insufficient to justify a jury in returning a verdict in plaintiff's favor. *Melnick v. State Farm Mut. Auto. Ins. Co.,* 106 N.M. 726, 749 P.2d 1105 (1988); *Casarez v. Garcia,* 99 N.M. 508, 660 P.2d 598 (Ct.App. 1983). The record supports the trial court's ruling.

In order to establish a claim of negligent misrepresentation, as indicated in SCRA 1986, 13–819, plaintiff must present evidence indicating that defendant made a negligent and material misrepresentation and that the misrepresentation:

[Was an] untrue statement upon which the other party did in fact rely in entering into the contract, and in the absence of which the other party would not have entered into the agreement.

*A negligent misrepresentation is one where the speaker has no reasonable*

*ground for believing that the statement made was true.* [Emphasis added.]

*Id.*

The record indicates that prior to requesting bids, Sandia hired an independent engineering firm to prepare plans for the project. The engineering firm in turn hired Albuquerque Testing Laboratories to dig test holes at the site and make preliminary computations concerning the amount of rock necessary to be removed and soil conditions at the construction site. The testing laboratory dug test holes and submitted a report which also recommended that more test holes be dug in order to more fully ascertain the precise amount of rock in the area to be excavated. In addition to its recommendation that more test holes be dug, the testing laboratory added a disclaimer to its report indicating that it could not be certain as to the amount of rock in the project area. After receiving the test reports, the design of the project was modified by Sandia so as to reduce the amount of necessary excavation. Prior to soliciting bids, the plans and specifications, together with the report of the testing laboratory, including its recommendation that additional test holes be dug, were furnished to the plaintiff and all other prospective bidders.

The partial record before this court contains the deposition testimony of Paul Lawrence, president of plaintiff corporation. Lawrence testified that before submitting his bid he had access to the plans and specifications and report of the outside engineer and testing laboratory and that he was aware of the recommendation that more test holes should be dug to fully determine ground conditions and he saw the disclaimer concerning the uncertainty of the amount of rock in the site to be excavated. Lawrence testified in his deposition that he went "ahead and bid it knowing that the disclaimer [was] there." Plaintiff did not make any additional subsurface soil investigation of the area in question, and submitted a successful bid, relying in part, upon information plaintiff received from prospective subcontractors which it solicited to assist in preparing its bid on the project.

The appellate record, although incomplete, indicates that among other things, prior to submitting its bid plaintiff received documents from Sandia stating in part:

> A soil investigation report for the project is available for the contractor's information at the office of Sandia * * * *the soil investigation report is not part of this contract.* There is no express or implied guarantee as to the accuracy of the data nor the interpretation thereof. *Each Bidder must form his own opinion of the character of the materials which will be encountered from an on-site inspection by himself and from his own interpretation of the information. A Bidder may make additional subsurface soil investigations at his own expense* * * *. [Emphasis added.]

A prerequisite to determining whether the plans and other documents furnished by Sandia amounted to a negligent misrepresentation, whether plaintiff in fact relied upon an alleged misrepresentation, or whether the materials claimed to have been removed were in fact rock, necessarily requires this court to examine the contract, plans and written materials provided by Sandia to prospective bidders, and to review the record to ascertain whether the evidence is sufficient to support plaintiff's claim that it relied upon a material misrepresentation of Sandia, and that Sandia had no reasonable ground to believe that the statement was true.

I am unable to agree with the majority that "Sandia made a positive representation apart from the soil investigation report, in the plans and specifications as to the amount of rock to be encountered." First, Sandia's supplemental brief asserts that "[a]ll of the drawings, designs, and specifications are contract documents * * *. This language clearly bars a contract claim against Sandia based upon the contention that 2,400 cubic yards of material were contracted for. The 2,400 cubic yards was Clifford Andersons's [Scanlon Engineer] estimate of rock which was adopted by Sandia; *it was not a contract amount.*" (Emphasis added.) Second, in

my opinion the majority statement that "the plans, specifications and drawings representing the amount of rock to prospective bidders were part of the contract and were not disclaimed," is not verifiable in the record on appeal. Whether plaintiff proved this fact is subject to question because this is contested by Sandia and the applicable plans, specifications and drawings are not part of the appellate record. Whether the language or provisions alleged to have been misrepresented were in fact part of the contract is a question of law. *Jaeco Pump Co. v. Inject–O–Meter Mfg. Co.,* 467 F.2d 317 (10th Cir.1974).

I also am unable to agree that the portion of Anderson's testimony relied on by the majority is sufficient to overturn the trial court's ruling. The appellate record does not contain all of the testimony of the trial witnesses who testified concerning the alleged misrepresentation, nor does the record contain the full text of the contract, plans and specifications used to formulate plaintiff's bid, including the matters alleged to have been misrepresented. Under this posture, the trial court's order granting a directed verdict pursuant to SCRA 1986, 1–050(A) should be affirmed. *Nichols v. Nichols,* 98 N.M. 322, 648 P.2d 780 (1982) (it is appellant's duty to present a sufficient record on appeal, and where there is a doubtful or deficient record, every presumption is indulged in favor of the correctness and regularity of the ruling of the trial court). *See also Fisher v. Terrell,* 51 N.M. 427, 187 P.2d 387 (1947).

Without an opportunity to review the testimony of the witnesses who testified concerning the alleged misrepresentation, or the complete text of the contract (including the plans and drawings in question), or to note the contents of all of the exhibits bearing on the claimed misrepresentation introduced at trial, this court cannot accurately assess the issue on appeal. The complete provisions of the contract and other accompanying documents bearing on the case are vital to resolution of a contractor's claim of misrepresentation. *Shaeffer v. Kelton,* 95 N.M. 182, 619 P.2d 1226 (1980) (contract must be considered as a whole).

*See also Gardner–Zemke Co. v. State,* 109 N.M. 729, 790 P.2d 1010 (1990).

I would affirm the trial court's ruling.